## WOODARD HARDIN v. STATE.

No. A-4404. Opinion Filed Oct. 20, 1924.
(229 Pac. 654.)

(Syllabus.)

**Appeal and Error—Denial to Pauper Defendant of Necessary Transcript Without Cost Held Abuse of Discretion.** Where, in an application to appeal as a poor person, the trial court finds that as a matter of fact the defendant is a pauper and that there were 21 witnesses examined in the trial for the state and 11 witnesses for the defendant, and the uncontroverted showing is to the effect that counsel for the defendant could not make a statement of the evidence from memory, and that no adequate and accurate "bill of exceptions" could be had without a transcript of the evidence adduced at the trial, together with all the rulings of the trial court made during the progress thereof, it is a manifest abuse of judicial discretion for the trial court to deny to the defendant a transcript of the proceedings of the trial without cost to him.

Appeal from District Court, Atoka County; J. H. Linebaugh, Judge.

Woodard Hardin was convicted of the larceny of live stock, and he appeals. Reversed and remanded.

This is an appeal from the judgment of conviction in the district court of Atoka county, Okla. The defendant was prosecuted upon a charge of larceny of one pale red steer. The case consumed a greater part of three days. The jury returned a verdict of guilty and assessed the defendant's punishment at five years in the state penitentiary.

The defendant filed a motion for a new trial, alleging 26 errors. The court overruled the motion for a new trial on the 13th of Januarry, 1922, and pronounced judgment against the defendant and fixed his appeal bond at $2,500. He gave the defendant 60 days in which to prepare and serve a case-made. The judgment of conviction appears at page 16 of the case-made. Notices of appeal were served upon the county attorney and the court clerk.

The plaintiff in error filed his affidavit to be permitted to appeal as a poor person, and showing that to appeal it was necessary that a transcript of the evidence be had, and showing that the court reporter estimated the transcript would cost from $100 to $120. The plaintiff in error asked that an order be made requiring the court reporter to furnish him a transcript of the proceedings at the trial. On the 14th of March, 1922, the plaintiff in error filed an application for an extension of time to serve a case-made, and on the same day the court made an order extending the time 60 days in addition to the time allowed. On the 6th day of May, 1922, the plaintiff in error made another application for an extension of time to serve a case-made, and on the same day the court made an order giving an additional 30 days' extension of time to serve case-made. On the 10th day of June, 1922, the defendant filed an additional affidavit to appeal in forma pauperis, showing he had no property or money, and that 21 witnesses testified on behalf of the state, and that the evidence was voluminous, and that 11 witnesses testified on behalf of the defendant, and that their evidence was voluminous.

The application to appeal as a poor person was supported by the affidavit of J. G. Ralls, who represented the plaintiff in error in the trial of the case. This affidavit shows that the state used 21 witnesses and the defendant 11, and that the evidence was voluminous, and there were many objections and exceptions on the trial of the case. It further shows the introduction of testimony covered practically two days. It further shows there were many remarks made by the trial judge during the trial of the case to which exceptions were taken, and shows that he could not from memory make a statement of the testimony and the objections and exceptions and rulings of the court and the remarks of the court. The affidavit further shows that affiant had never

been paid anything by the defendant for representing him, and that the defendant had no property out of which to secure the payment of an attorney fee.

The plaintiff in error, on the 10th day of June, filed a supplemental affidavit showing that he was still unable to pay, etc., and filed in support of the application the affidavit of his father, J. M. Hardin. The father's affidavit shows that the family had no money or property out of which they could get money, and explains to an extent why the plaintiff in error could not get money. It shows that his presence was required to take care of a crippled brother that was partially paralyzed and unable to walk. It shows that the father endeavored to secure funds to pay for the transcript and that he had not been able to do so.

On the 10th day of June the court denied the application of the plaintiff in error and made and entered the following order:

"Now, on this the 10th day of June, 1922, came on to be heard the application of the defendant, Woodard Hardin, for an order requiring the court reporter that reported the trial of this cause to furnish him or his attorney, or file with the clerk of this court, a transcript of the evidence and proceedings had at the trial of this cause, without pay on the part of the said defendant, and at the expense of the county.

"And the court having seen and heard said motion, finds that the defendant, Woodard Hardin, is a poor person and has no money and no property with which to pay any part of the transcript of said proceedings, and the court further finds that in the trial of said cause there were examined 21 witnesses for the prosecution and 11 witnesses for the defendant, and that the probable cost of a transcript of the said evidence and the proceedings at the trial is $90, and that an estimate has been made by T. J. Kim, the court reporter that reported the trial of said cause; that it would cost from $90 to $110 to furnish such transcript of the evidence; and

that said court reporter refuses to furnish a transcript of said evidence unless the said defendant pay to him at least $90.

"And the court further finds that the defendant has no relatives or friends that has any property or money that are willing to furnish the defendant with any part of said amount of money, and that by reason of the financial condition of the said defendant he cannot furnish or pay any part of the cost of such transcript.

"The court further finds that the funds of Atoka county, Okla., out of which the cost of such a transcript would have to be paid, have been completely exhausted, and there is no money out of which to pay any part of said transcript.

"It is therefore ordered by the court that the application of the defendant, Woodard Hardin, for an order requiring the said court reporter, T. J. Kim, to furnish a transcript of the evidence and proceedings at the trial of the cause without cost to the defendant, be and the same is hereby denied."

### Assignments of Error.

First. The court erred in overruling the application of the plaintiff in error for a transcript of the testimony, statements and objections and rulings of the court and exceptions thereto.

Second. The court erred in not granting the application of the plaintiff in error for a transcript of the evidence, etc.

Third. The court erred in overruling the motion for a new trial.

J. G. Ralls, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating facts as above). This appeal is by partial case-made. The proceedings, with the exception of the transcript of the evidence and rulings of the trial court on the admission and rejection of evidence and the alleged remarks of the trial judge during the progress of the trial, are included in the partial case-made.

But one question appears to be presented by this appeal, to wit: Was it an abuse of discretion on the part of the trial judge, under the circumstances disclosed by the foregoing statement, to deny to defendant without cost to him a transcript of the evidence and proceedings of the trial proper?

Irrespective of whether or not the court funds of the county were exhausted at the time the order was made denying to defendant such transcript, we think, under the showing here made and the finding of the trial court, that it was a manifest abuse of judicial discretion to refuse to make the requested order. In no other way could defendant adequately present for review the numerous exceptions reserved by him during the progress of the trial. That the county was not in a position, at that time, to reimburse the court reporter for transcribing his shorthand notes, we think was not a sufficient reason for refusing the order. The court reporter is an employee of the state and as such receives a salary of $1,800 per annum in addition to the perquisites arising from work of this character. It was more important that this defendant have his trial properly reviewed by this court than that the court reporter be immediately compensated.

In the case of Hutchins v. State, 13 Okla. Cr. 717, 167 P. 338, this court held:

"In a criminal prosecution, where the defendant has been convicted and desires to appeal, upon a proper showing made to the trial court that he is unable to pay the court

reporter for a transcript of the testimony, or the court clerk for a transcript of the record, it is the duty of the trial court to make an order directing that this be done without expense to the defendant.

"On appeal by transcript from a conviction for murder, it appearing from the record that the plaintiff in error was denied his constitutional and statutory right to perfect an appeal by case-made as a poor person, by reason of the refusal of the court to order the court reporter to furnish him with a transcript of the proceedings, and the testimony taken upon the trial, the judgment is reversed and a new trial awarded."

In the body of the opinion it is said:

"In the case of Jeffries v. State, 9 Okla. Cr. 573, 132 Pac. 823, it was held that where a convicted defendant desires to appeal, upon the making of a proper showing to the trial court that he is unable to pay the stenographer for a transcript of the testimony, or the clerk for a transcript of the record, it is the duty of the trial court to make an order directing that this be done without expense to the defendant."

In delivering the opinion of the court, Judge Furman said:

"Appellant was tried and convicted of manslaughter in the first degree, and his punishment was assessed at fifteen years' imprisonment in the penitentiary. Appellant gave notice of appeal, and moved the court to direct that the case-made and record should be prepared without expense to him upon the ground that he was without friends and money and was unable to pay the stenographer for extending his notes and to pay the clerk of the court for making up the record. The fact that appellant was a pauper was not contested by the state. But the motion was denied by the court. In this we think there was error. * * * Stenographers are paid by the state $100 per month for their services. They are also allowed to charge liberal fees for extending their notes where the parties desiring such extension are able to pay for the

same. But, when a defendant is unable to pay for extending the notes of the stenographer, he is as much entitled to have this done without cost to him as he is to have the services of the sheriff in summoning witnesses or any other court officer in the performance of his duty in such cases. It is therefore the right of a defendant if he is unable to pay for the same to have the stenographer's notes extended without cost, and it is the duty of the trial court to make an order to this effect, and to see that it is obeyed. As this was not done in the case at bar, there is no case-made in the record, and appellant has been denied his constitutional right to have his case reviewed by this court upon the facts. Whether he is guilty or innocent he has this right, and he cannot lawfully be deprived of it."

And again the following:

"The rule announced by this court in the Jeffries Case should by this time be familiar to all who are concerned with the administration of the criminal law. In the case of Harris v. State, 10 Okla. Cr. 417, 137 Pac. 365, 139 Pac. 846, it is held that:

" 'Where a defendant is able to employ counsel to represent him, and the trial court refused to enter an order requiring the testimony to be extended without expense to the defendant, such refusal will not constitute ground for reversal, unless it affirmatively appears from the record that the defendant was a pauper, and that such counsel so employed could not have made up a statement of the evidence from memory, and that thereby the trial court had abused its discretion.'

"In the case at bar the trial court, in denying the motion, 'finds that the allegations of poverty alleged in said motion are true, and that the same are not controverted by the plaintiff; but the court further finds there is no merit in defendant's contemplated appeal.'

"Under the Constitution and laws of this state an appeal may be taken by the defendant as a matter of right from a judgment of conviction in a criminal prosecution against him,

and he is entitled to have this court review the proceedings had upon his trial and conviction when such appeal is taken according to law. Every citizen should feel and know that under our Constitution and laws there is no one so rich and powerful as to be above the just penalties of the law, and no one so poor and humble as to be beneath its complete protection."

In the case at bar the trial court found that the defendant was a pauper; that there were 21 witnesses examined in the trial for the state and 11 for the defendant; that the probable cost of transcribing the evidence would be from $90 to $110; and that the court reporter refused to transcribe the evidence unless paid by the defendant the sum of at least $90.

It also affirmatively appears from the record that counsel for the defendant could not make a statement of the evidence from memory. In other words, we think it clearly appears that no adequate and accurate "bill of exceptions" necessary for a proper review of the trial could have been had without a transcript of the evidence adduced at the trial, together with all the rulings of the trial court made during the progress thereof.

For such reason we think that there is here shown a clear and manifest abuse of judicial discretion in not making an order to the court reporter to transcribe these proceedings without cost to this defendant, and for such reason the judgment is reversed, and the cause remanded for another trial.

BESSEY and DOYLE, JJ., concur.