MARK BEAN v. STATE.

No. A-8954.   Feb. 7, 1936.
(54 Pac. [2d] 675.)

L. G. Lewis, Paul Myrick, and R. J. Shive, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, for convenience in this opinion referred to as the defendant, was by information charged with the crime of murder; was tried and convicted of manslaughter in the first degree, and his punishment fixed at imprisonment in the state penitentiary for a term of fifteen years.

The evidence of both the state and the defendant shows that the difficulty occurred at the home of Ben Hahn, near Cushing, Okla., where a dance was in progress; there was some drinking during the time the parties were there at the dance.  It is further shown that Wesley Mc-Coin, the party the defendant is charged with killing, became involved in a fight, or some kind of a difficulty, with the Lauderdale boys; that Mrs. Hahn ordered them out of the house; the defendant, Mark Bean, had been over to the Carroll home, a short distance from the Hahn home, and spent the evening, leaving the Carroll place about 11 o'clock, and stopped at the Hahn place just a few minutes before the difficulty occurred in the house.

It is further shown that as the parties went out the door they broke a glass out of one of the doors, and Mrs. Hahn followed them out in the yard and demanded pay for a new glass. The testimony shows that after they got out of the house, Ben Hahn, who was a brother-in-law of the defendant, became involved with Elmer McCoin, the father of the deceased; there is some dispute in the testimony as to whether this fight between Ben Hahn and Elmer McCoin occurred prior to the difficulty between Wesley McCoin and the defendant, Mark Bean; the defendant insists his brother-in-law and Elmer McCoin engaged in a fight and the deceased rushed in and commenced hitting Ben Hahn in the back, and he went in and separated them, and that he became involved in a fight with Wesley McCoin.

Several witnesses who saw the fight testify the defendant and deceased fought for several minutes, and the defendant got loose from the deceased and ran through a grape vine that was framed in the yard, and deceased followed him; when they got through the grape vine they clinched and both went to the ground, the defendant being on top of the deceased, who was trying to get up, and was on his hands and knees; that defendant struck the deceased one or more times while he was in that position, and deceased sank to the ground, and some one caused the defendant to stop fighting, and took him away from the deceased. Later, examinations showed that the deceased had been cut with a knife, from which wounds he afterwards died in a hospital. Up to the time of the fight between McCoin and the defendant there is no conflict in the testimony. The defendant denies he had a knife or that he cut the deceased. He claims he did not even own a knife at the time. He admits fighting the deceased, but insists that he did not use a knife on him. All of the testi-

mony of the eyewitnesses·in detail show the fight between the defendant and the deceased, and its culmination; that the deceased sank to the ground unable to fight longer.

There is no evidence whatever that any one else was near the deceased or struck the deceased but the defendant. The evidence is clear as to the starting of the difficulty in the house, and that the McCoin boys were involved in the difficulty; and when they got out in the yard the father, Elmer McCoin, became involved in the difficulty with Ben Hahn, and that Ben Hahn was cut by some one while the row was going on. The foregoing is the substance of the testimony, and it is not deemed necessary to set it out in full.

The first error the court will consider is the eighth, in which the defendant insists that the court erred in giving instruction No. 12, for the reason that the instruction set forth is beyond the right of the court or the jury considering the guilt or innocence of the party on trial, and is based on a statute intended by the Legislature as a reward for good behavior while in prison, and should not be considered by the jury in fixing the punishment, and does not aid or assist at arriving at the guilt or innocence of the party on trial.

Instruction No. 12, complained of by the defendant, is as follows:

"You are further instructed that if you find the defendant guilty of any offense in this case, it is your duty to fix his punishment, and in this connection, you are instructed that when a defendant is convicted of a felony in the State of Oklahoma and receives a prison sentence as a punishment therefor, he does not necessarily serve the entire term of punishment imposed for the reason that the laws of this state make a provision of commutation of time for good behavior. The following table shows the commu-

tation of time given convicts on their good behavior in this state:

| Sentence | | Net time served Years | Months | Days |
|---|---|---|---|---|
| 4 | years | 2 | 3 | 7 |
| 4½ | ” | 2 | 5 | 29 |
| 5 | ” | 2 | 8 | 21 |
| 6 | ” | 3 | 2 | 5 |
| 7 | ” | 3 | 7 | 17 |
| 8 | ” | 4 | 1 | 1 |
| 9 | ” | 4 | 6 | 15 |
| 10 | ” | 4 | 11 | 28 |
| 11 | ” | 4 | 5 | 10 |
| 12 | ” | 5 | 10 | 24 |
| 13 | ” | 6 | 4 | 5 |
| 14 | ” | 6 | 9 | 21 |
| 15 | ” | 7 | 3 | 5 |
| 16 | ” | 7 | 8 | 18 |
| 17 | ” | 8 | 2 | 2 |
| 18 | ” | 8 | 7 | 20 |
| 19 | ” | 9 | 0 | 28 |
| 20 | ” | 9 | 6 | 11 |
| 25 | ” | 11 | 9 | 18 |
| 30 | ” | 14 | 0 | 25 |
| 40 | ” | 18 | 7 | 8 |
| 50 | ” | 23 | 1 | 23 |
| 60 | ” | 27 | 8 | 6 |
| 99 | ” | 46 | 3 | 2 |

The foregoing instruction is evidently predicated upon section 5341, O. S. 1931, which is as follows:

"Every convict who shall have no infractions of the rules and regulations of the prison or laws of the state recorded against him shall be allowed for his term a deduction of two months in each of the first two years; four months in each of the next two years; five months in each of the remaining years of said term, and pro-rated for any part of the year where the sentence is for more or less than a year. The mode of reckoning credits shall be as shown in the following table:

Schedule of Credits.

| No. of years of Sentence | Good Time Granted | Total Good Time Made | Time to be served if full time is made |
|---|---|---|---|
| 1st year | 2 months | 2 months | 10 months |
| 2nd year | 2 months | 4 months | 1 year, 8 mo. |
| 3rd year | 4 months | 8 months | 2 years, 4 mo. |
| 4th year | 4 months | 1 year | 3 years, |
| 5th year | 5 months | 1 year, 5 mo. | 3 years, 7 mo. |

and so on, through as many years as may be the term of the sentence. And, in addition to the deduction above provided for, every convict shall be entitled to a deduction from his sentence of two days for every six days' work performed by him: Provided, however, that no convict shall be entitled to deduction for good time as herein provided in the event he has been guilty of misconduct or violation of the prison rules and regulations, unless relieved therefrom by the warden."

Section 3058, O. S. 1931, makes it the duty of the court to decide all questions of law which arise in the course of the trial. Section 3062, O. S. 1931, provides:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court."

In Dooling et al. v. State, 3 Okla. Cr. 491, 106 Pac. 982, in the second paragraph of the syllabus, the court said:

"The instructions of the trial court should apply the law to the competent evidence as offered by the state and the accused, and leave the jury to determine as to what facts and circumstances are established by the evidence."

This court has repeatedly held that the instructions of the court must be applicable to the testimony produced in the trial of the case.

The court correctly instructed the jury upon the law applicable to the evidence presented on the question of murder and manslaughter in the first degree, as defined by our statute. The instruction complained of is a section of our statute found under the title of "Instructions" governing our penitentiary and reformatory. Under the provisions of the section herein quoted, it is clearly shown that it provides for a condition subsequent to the conviction and sentence and is not germane to the question involved in the trial of the defendant as to the guilt or innocence, but provides for conditions subsequent to conviction and after the party has been incarcerated in our penitentiary or reformatory. It is offered as a reward for good behavior of the convict.

We have searched in vain to find where any court in the trial of a defendant has instructed the jury that when a defendant is convicted of a felony and receives a prison sentence as a punishment therefor he does not necessarily serve the entire term of punishment imposed, for the reason that the law makes a provision of commutation of time for good behavior.

Under the statutes of Oklahoma when the court has instructed the jury as to the law as applied to the evidence in the case, it has discharged its full duty under its oath and the law; and when that duty has been fully discharged, the court goes outside of the facts in this case and gives the instruction herein complained of, it committed an error prejudicial to the rights of the defendant. However, it will be seen in this case that the evidence clearly shows that no one had an opportunity to strike the fatal blow

that took the life of the deceased but this defendant, and the evidence is amply sufficient to convict the defendant of manslaughter in the first degree. The evil growing out of the instruction complained of can readily be seen for the reason that no provision is made for any one in authority other than a ministerial officer of the state penitentiary or reformatory to say whether or not the prisoner had a good record. Should the prisoner for any reason commit a slight infraction of the rules of the prison or incur the enmity of the warden or any one having supervision over him, a report could be made reporting that the prisoner had broken the rules and regulations and was not entitled to good time, and the prisoner would be compelled to serve out his entire term for which the court and the jury convicted him.

It is clear the enacting of the statute for commutation for good behavior was never intended by the Legislature to be considered by the jury in the trial of the defendant, on the question of his guilt or innocence, or the punishment imposed by the jury. The instruction complained of as error only goes to the question of the commutation of the defendant after he has been convicted and incarcerated.

This court has many times held that it is not every erroneous instruction that entitles a defendant to reversal, and especially so as in this case, where the testimony clearly shows the defendant guilty of manslaughter in the first degree, the instruction opened the way for the jury, and perhaps did cause it to impose a greater sentence on the prisoner than it would have imposed had the instruction not have been given.

Considering all the facts and circumstances in the case, and the fact of the testimony showing the guilt of

the defendant of manslaughter in the first degree, we do not think that the erroneous instruction given entitles the defendant to have his case reversed. However, we believe the giving of the instruction caused the jury to impose a greater punishment on the defendant than it would otherwise have given, and that the judgment of fifteen years should be modified to seven years.

There is no merit in the other errors assigned sufficient to warrant this court in considering them.

For the reasons herein stated the judgment of the trial court is modified to seven years' imprisonment, and as modified the judgment of the trial court is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.