## W. C. COWLEY v. STATE.

No. A-9260. March 24, 1939.
(88 P. 2d 914.)

480

Paul Pugh, of Oklahoma City, and M. W. Pugh, of Marlow, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., and John Eberle, Asst. Co. Atty., both of Oklahoma City, for the State.

DOYLE, P. J. Plaintiff in error, W. C. Cowley, was convicted in the district court of Oklahoma county, on a charge of child abandonment, and was sentenced to confinement in the state penitentiary at McAlester for a term of ten years.

From the judgment he appealed by filing in this court on February 5, 1937, a petition in error with a duly certified transcript of the record attached, labeled, "Case-made."

It appears from the record that the preliminary information was filed before Leo B. White, justice of peace, Oklahoma City justice district, April 17, 1936, charging: "that on the 17th day of April, 1936, and for two years prior thereto in Oklahoma county, Oklahoma, W. C. Cowley, did then and there willfully, unlawfully, wrongfully and feloniously, without justifiable or excusable cause, abandon and desert his legitimate children, under the age of 15 years, to wit: Trula Cowley of the age of 14 years and Elnora Cowley of the age of 11 years, and did wholly fail, refuse and neglect to contribute anything to their support, said desertion and abandonment on the part of the said defendant left the said children in destitute and necessitous circumstances, contrary to", etc. The complaining witness, Mittye Cowley, being the former wife of the defendant.

On August 10th a preliminary hearing was held before said justice at which time it was ordered that the defendant be held to answer to the district court of Oklahoma county on the charge of child abandonment.

On August 20th the information was filed in district court.

On October 21, 1936, the case regularly came on for trial, leave was granted to withdraw the plea of not guilty and to file a demurrer on the grounds that the court did not have jurisdiction of the cause or of the defendant; and that the facts stated in said information do not constitute a public offense. Which demurrer was overruled. Exception allowed.

On October 21st the jury returned their verdict finding "the defendant, W. C. Cowley, guilty as charged in the

information herein and fix his punishment at imprisonment in the state penitentiary for a period of 10 years."

Motion for new trial was duly filed, and on October 30th overruled. Thereupon the court rendered judgment and sentence in pursuance of the verdict.

Notice of appeal was duly given and the court fixed the appeal bond in the sum of $2,500. The bond was given and approved November 2, 1936. On November 24th the court granted an extension of an additional 30 days to make and serve a case-made. On December 23rd the defendant filed his verified application for an order of the court directing that a case-made be prepared at the costs of the county, and the court after examining said application and hearing argument of counsel finds that said application should be denied. The same day the court made an order extending the time to prepare and serve a case-made for a further period of 30 days in addition to the time heretofore granted. On January 27, 1937, the court clerk certified "That the foregoing is a full, true and correct transcript of the record in the cause."

The information alleges all the essential ingredients of the offense as defined by the Penal Code, O.S. 1931, § 1830, 21 Okla. St. Ann. § 853, and the demurrer thereto was properly overruled.

It is contended that the trial court erred in denying the defendant's application for a transcript of the reporter's notes to be furnished at the expense of the county.

It is said in the brief of the plaintiff in error:

"We, respectfully submit that as the record before this court affirmatively shows that the defendant is a poor person, and unable to pay for a case-made; that he has no relatives or friends who will do so; that as the record in this regard stands uncontradicted, the trial court committed prejudicial error in refusing to order a transcript of the court reporter's notes at the cost of the county.

"A review of the cases show several in which the court has used language to the effect that the granting or refusal of a case-made at the costs of the county rested in the sound discretion of the court." Citing Harris v. State, 10 Okla. Cr. 417, 137 P. 365, 139 P. 846; Hutchins v. State, 13 Okla. Cr. 717, 167 P. 338; Hardin v. State, 28 Okla. Cr. 123, 229 P. 654; Young v. State, 33 Okla. Cr. 255, 243 P. 763, 765; Brogdon v. State, 38 Okla. Cr. 269, 260 P. 784; Lenora v. State, 51 Okla. Cr. 291, 1 P. 2d 832; Hembree v. State, 53 Okla. Cr. 79, 7 P. 2d 491; Reed v. State, 53 Okla. Cr. 391, 12 P. 2d 551.

In the instant case this court is of the opinion that the contention made is without merit.

The main question upon the trial of the case was the ability of the defendant to earn money for the support of his children, and the amount he earned. The fact that he was able-bodied, and working, was not disputed.

It appears that he was the owner of an automobile that he used in his business. The trial court who heard the evidence in the trial did not believe in the truthfulness of the affidavit, and so stated by his decision in the matter. Upon the hearing it appears that the defendant was not present, and was not put upon the stand to testify to his inability to pay for a transcript, he therefore could not be cross-examined.

Counsel for the state in their brief say:

"This was only another attempt by defendant, who by his own brief, admits his failure to meet the requirements of the order of the district court of this state requiring him to pay $15 a month support for his children in a divorce decree decided in Stephen county in 1930, to force some one else to assume his rightful financial burdens. It is an attempt on the part of the defendant to put the state of Oklahoma to all the expenses possible while he flaunts the orders of the district court with reference to support of his children, and says in his brief that the wife's proper remedy is by contempt, (in a distant county of course and while she is busy working every day and can-

not afford either a private lawyer to bring this action or bus fare to attend it) while he is out on appearance bond before the trial and an appeal bond after the trial, and hires his own lawyer and rides in his own automobile while his family is destitute."

Under the next assignment of error counsel urge that the judgment should be reversed, because the court erred in giving instruction No. 9, as follows:

"You are instructed that, while it is a provision of law that any person convicted of the offense charged in the Information may by the Governor of the state be paroled on the recommendation of the trial judge in whose court he was convicted, upon said person entering into an undertaking in the form provided by the judge of said court, with two or more good and sufficient sureties, conditioned that the said defendant shall within ten days from the first of each month pay to the clerk of the court where he was convicted such amount as has been fixed by the court for the support of his minor children, in this connection you are instructed that in your verdict you shall only determine the guilt or the innocence of the defendant, and the period of time he shall serve as a penalty; and the question of the giving of bond for the payment of money to the said minor children and his parole by the Governor are questions of procedure that are not submitted to you herein. Notwithstanding this provision of the law, the defendant should not be convicted here unless the jury are satisfied, by competent evidence beyond a reasonable doubt, that he is guilty in manner and form as charged in the information.

"Given and excepted to by Def.

"Lucius Babcock, District Judge."

To support the defendant's contention that the giving of instruction No. 9 was prejudicial error, counsel cites, among others, the case of Bean v. State, 58 Okla. Cr. 432, 54 P. 2d 675, 676.

In the Bean Case it is said:

"The first error the court will consider is the eighth, in which the defendant insists that the court erred in giv-

ing instruction No. 12, for the reason that the instruction set forth is beyond the right of the court or the jury considering the guilt or innocence of the party on trial, and is based on a statute intended by the Legislature as a reward for good behavior while in prison, and should not be considered by the jury in fixing the punishment, and does not aid or assist at arriving at the guilt or innocence of the party on trial. * * *

"It is clear the enacting of the statute for commutation for good behavior was never intended by the Legislature to be considered by the jury in the trial of the defendant, on the question of his guilt or innocence, or the punishment imposed by the jury. The instruction complained of as error only goes to the question of the commutation of the defendant after he has been convicted and incarcerated.

"This court has many times held that it is not every erroneous instruction that entitles a defendant to reversal, and especially so as in this case, where the testimony clearly shows the defendant guilty of manslaughter in the first degree, the instruction opened the way for the jury, and perhaps did cause it to impose a greater sentence on the prisoner than it would have imposed had the instruction not have been given.

"Considering all the facts and circumstances in the case, and the fact of the testimony showing the guilt of the defendant of manslaughter in the first degree, we do not think that the erroneous instruction given entitles the defendant to have his case reversed. However, we believe the giving of the instruction caused the jury to impose a greater punishment on the defendant than it would otherwise have given, and that the judgment of fifteen years should be modified to seven years."

Instruction No. 9 is a clear and concise statement of the law on the alternative punishment provided for in a child abandonment case, and the court therein states that:

"In this connection you are instructed that in your verdict you shall only determine the guilt or the innocence of the defendant, and the period of time he shall serve as a penalty; and the question of the giving of bond for

the payment of money to the said minor children and his parole by the Governor are questions of procedure that are not submitted to you herein. Notwithstanding this provision of the law, the defendant should not be convicted here unless the jury are satisfied, by competent evidence beyond a reasonable doubt, that he is guilty in manner and form as charged in the information."

However, in a prosecution for child abandonment we think the proper practice is for the court not to submit the question of the punishment to the jury unless request is made on the part of the defendant, and even then the question of the alternative punishment should not be given.

The court is firmly committed to the rule that an instruction improper and erroneous will not be held reversible error where it is manifest, on consideration of all the instructions given, the testimony in the case, and the verdict of the jury, that such an instruction did not work to the prejudice of the defendant, or deprive him of any substantial right.

Upon the record before us we are of the opinion that the giving of said instruction did not constitute prejudicial error.

The defendant maintains that the district court of Oklahoma county in this case was without jurisdiction. His counsel in his brief says, "We contend that the district court of Oklahoma county had no jurisdiction of this criminal proceeding. We find no case in Oklahoma in point. All of the cases in this state are where no provision is made as to support money in a divorce decree." Citing and quoting from State v. Coolidge, 72 Wash. 42, 129 P. 1088. "That under the authority of this case there is no question but that the district court of Oklahoma county had no jurisdiction."

This question has already been determined by this court against the defendant, in the case of Dyer v. State, 58 Okla. Cr. 317, 52 P. 2d 1080, holding that:

"A divorce decree, awarding custody of a minor child to the mother, does not destroy the relation between the father and his child. As to the child, his legal obligation remains the same. The divorce did not release him from any pre-existing natural, moral, or legal duty to support and educate and to provide for the future support of such child."

In the opinion we said:

"It is said by some courts and textwriters that the primary object is to redress a public grievance by relieving the public from the burden of caring for a helpless child, or an indigent wife; while others take the view that these statutes, though criminal rather than civil, in kind, are in the final analysis really designed as a remedy for the benefit of the wife or the child, in addition to the remedies afforded by civil proceedings. State v. Langford, 90 Ore. 251, 176 P. 197, 201; People v. Malsch, 119 Mich. 112, 77 N.W. 638, 75 Am. St. Rep. 381; State v. Waller, 90 Kan. 829, 136 P. 215, 49 L.R.A., N.S., 588; 13 R.C.L. 1191. * * *

"The obligation of parents to support their offspring rests upon an entirely different foundation from that upon which the law bases the duty of the husband to support his wife. That obligation is at once legal and natural. It springs as necessarily from the law as from the primal instincts of human nature. Its consistent enforcement is equally essential to the well-being of the state, the morals of the community, and the development of the individual. Prolonged childhood is a condition of civilization as well as a product of conscience. The child, helpless in extreme infancy and required in the maturer years of its minority to obey the reciprocal duty of serving its parents, is not to be deprived of its natural and legal right of protection and support by its father, because of any family quarrel or of any agreement between husband and wife. It is not a party to divorce proceedings. It is not barred as to its rights by any decree therein. * * *

"Although the language of the statute (§ 1830) is 'willfully neglect or refuse to maintain or provide for such child,' still it is not necessary for the state to prove that the father has wholly failed and neglected to fulfill his

duty to support his child. The statute is violated, not only where there is a complete failure to support, but also where there is a partial failure. This neglect or refusal must be willful or negligent, and not a mere failure on account of inability. * * *

"According to the great weight of authority and according to what we believe is the plain intent of our statutes, the fact that the mother alone or together with other persons furnished all the support needed for the child does not constitute good or sufficient cause for any failure or neglect by the father. Hunter v. State, supra; State v. Waller, 90 Kan. 829, 136 P. 215, 49 L.R.A., N.S., 588; 20 R.C.L. 623. * * *

"Generally speaking, a wife is entitled to support at the hands of the husband, and both law and common humanity charge him with the duty of maintaining his own infant child.

"It was to prevent and punish such outrages against humanity and the marriage obligation that the statute was enacted, and its force and effect should not be nullified by any nicety of construction."

It is apparent from the record before us, and it follows from what has been said, and the authorities cited, that the assignments of error relied upon for a reversal of the judgment, are without merit.

Upon our review of the record and the briefs we are persuaded that the punishment imposed is excessive, and that the judgment should be modified by reducing the sentence.

It is therefore considered and adjudged that the judgment and sentence of the trial court be modified and the sentence reduced from ten years to confinement in the state penitentiary at McAlester for a term of seven years.

For the reasons stated, the judgment and sentence as modified must be, and it is, affirmed.

BAREFOOT and DAVENPORT, JJ., concur.