William Ross HERANDY, II, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15101.

Court of Criminal Appeals of Oklahoma.

March 17, 1971.

Rehearing Denied Aug. 31, 1971.

Loren McCurtain, McAlester, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, William Ross Herandy, II, hereinafter referred to as defendant, was tried by a jury in the District Court of Pittsburg County, Oklahoma, for the crime of incest. The jury returned a verdict finding defendant guilty, and fixed his punishment at ten years imprisonment in the Oklahoma State Penitentiary. Defendant's Motion for New Trial was denied by the trial court, after a complete and full hearing was had on said Motion. Judgment and sentence was imposed on September 9, 1968, and from that judgment and sentence this appeal was perfected.

This appeal was filed on February 7, 1969, and briefs should have been filed within thirty (30) days after the appeal was perfected to this Court; however, on August 5, 1969, no briefs having been filed, the matter was Summarily Submitted. Thereafter, on September 9, 1969, the Order Summarily Submitting said cause was withdrawn and the brief of plaintiff was filed.

The information was filed June 13, 1968, and alleges that on May 5, 1968, defendant had sexual intercourse with one Rosemary Herandy, his daughter. The information was filed on the affidavit of James B. Martin, District Attorney for the County of Pittsburg, who had been informed of the illegal acts by Rosemary Herandy. The State offered the testimony of two witnesses, the prosecutrix and Cynthia Faith Cole, her step-sister. The parties stipulated that if Dr. Homer Wheeler were to testify his testimony would be that "the prosecutrix's vaginal tract would show she has had intercourse on many occasions." At the conclusion of the testimony of Cynthia Faith Cole, the State rested its case.

Defendant testified in his own behalf and denied that he had sexual relations with his daughter on May 5, 1968, or at any other time, previous to that date. He also offered the testimony of his wife; several other relatives; and six character witnesses who testified that his reputation was from average to good. The jury retired and subsequently returned a verdict finding defendant guilty of the crime of incest.

The court then conducted a second stage of the proceedings in which the jury was instructed concerning the amount of sentence which would be imposed on defendant. The court's instruction number fourteen consisted of that section of the Statutes which pertains to the good conduct credits which an inmate in the penitentiary may be awarded for good conduct, donation of blood and for work performed. At the time of the trial, the Statute required that such be included in the court's instructions to the jury. Thereafter, the jury returned a verdict assessing defendant's punishment

at the maximum sentence of ten (10) years imprisonment.

Defendant filed a Motion for New Trial and amended his Motion to include new evidence not known at the time of the trial. Attached to the amendment for Motion for New Trial were the affidavits of: Cynthia Faith Cole, who had testified as one of the State's witnesses and Billy and Jean Mc-Bee, husband and wife, both of whom were character witnesses for defendant. Cynthia Faith Cole stated in her affidavit that everything she had testified to at defendant's trial was not true; that her testimony was the result of a story made up by Rosemary to get back at defendant and his wife. She denied that Rosemary had told her, or anyone in her presence, of any alleged acts of sexual-intercourse; and, she asserted that Rosemary had engaged in sexual relations with other boys. There were also other things asserted in the girl's affidavit which were raised in an effort to refute Rosemary's testimony at the trial, as well as her own testimony. The affidavits of Mr. and Mrs. McBee concerned their visit to the Francis Willard Home in Tulsa, Oklahoma, where Rosemary had been placed by the Juvenile Court.

A hearing was had on defendant's Motion for New Trial at which the parties testified for the defendant, and at which the State offered the testimony of Rev. Daris M. Parker, the Administrator of the Francis Willard Home. Rev. Parker testified that he had conducted an investigation into the things asserted in the affidavits of Mr. and Mrs. McBee; and he was satisfied the allegations contained in both affidavits were without merit. The affidavits set forth certain things which could be construed as indicating sexual aberrations on the part of Rosemary Herandy. After hearing all the testimony and arguments of both counsel, the court denied defendant's Motion and imposed judgment and sentence.

The facts of this case are very similar to those found in Fitzpatrick v. State, 87 Okl.Cr. 51, 194 P.2d 184 (1948), which was a case both sides cited in their briefs. In that case the late Judge Bert Barefoot entered a very strong dissent to the majority opinion of this Court; strongly pointed out the difficulty experienced in trying to defend such a charge. We hasten to state that such circumstance exists in this defendant's trial.

█ Defendant's first proposition asserts that the uncorroborated testimony of the prosecutrix is not sufficient to sustain the jury's verdict; and that her testimony was so fantastic and improbable that as a matter of law it cannot stand alone. After carefully reviewing the record of testimony we do not agree with defendant's position. Notwithstanding defendant's denial of the act, the stipulation admitted concerning the doctor's testimony revealed that the prosecutrix had engaged in sexual relations with someone for a period of time. Also, much of defendant's testimony corroborated that of the prosecutrix as to aspects, other than the illicit act, i. e., the bed-wetting and application of the fence-charger to break Rosemary of the habit; the whippings by the other children in the family because of her poor grades at school, as well as the circumstance of opportunity—while not being corroborating evidence adds to what the jury must have considered when reaching its verdict. It is observed also that defendant's explanation of what he did during the fifteen to thirty minute period of time was not too convincing. It may have been the truth; however, it had to also convince the jury.

█ The circumstance which confuses this writer concerns prosecutrix's testimony which related that at the time of the preliminary examination she hated her father, but now [at the time of the trial] she was only mad at him. She no doubt had other reasons for being mad at him; because of his inept manner of trying to discipline her, and the other children. Nonetheless, the jury heard the testimony, saw the witnesses testify, evaluated their demeanor, and

reached the conclusion that defendant was guilty. It has long been the rule of this Court that we will not tamper with the jury's verdict only because a conflict of testimony exists. See: Hudson v. State, Okl.Cr., 399 P.2d 296.

The evidence does not reflect whether or not the prosecutrix wore "panties" under her skirt, but it does reflect that the prosecutrix testified on direct examination as follows: (C.M.–44)

"Q: Did he or you one take off any of your clothing at that time?

A: I did.

Q: What did you take off Rosemary?

A: My skirt.

Q: Did you take anything else off?

A: No sir."

■ Regardless, with the proper leading questions by the District Attorney the prosecutrix satisfied the jury that the act of sexual intercourse occurred, and had been occurring for several years. The testimony of the prosecutrix was clear and convincing, as well as being consistent except for her one admission on cross-examination that the illicit activity had gone on since she was six years old. Earlier she testified it had been going on since she was in the sixth grade. This conflict is understandable since she was only fifteen years old at the time of the trial.

■ Defendant's second proposition concerns the newly discovered evidence which was set forth by the affidavits referred to earlier. It is always a problem in these cases when a daughter testifies under oath, as in this case, and later refutes that testimony by an affidavit. Actually the only aspect of Cynthia Cole's testimony which required refuting, concerned the time spent during the second trip to the grandfather's home. Her testimony may have been "corroborating" at only one point, during cross-examination when defense counsel referred to the act defendant was charged with having committed. Otherwise, she did not clearly corroborate the act of sexual-intercourse; consequently, denial of defendant's Motion for New Trial is not sufficient to reverse this case on the basis of the affidavit of Cynthia Faith Cole alone. Likewise, the McBee affidavits were apparently sufficiently explained—at least to the trial judge's satisfaction—by Reverend Parker. Whether or not Cynthia's different testimony would have changed the result of this trial is doubtful. As related earlier, the only supporting statements were brought out on cross-examination by defense counsel. Hence, as we see the affidavits they were only sufficient to tend to impeach the state's witnesses. This Court provided in Ward v. State, Okl.Cr., 444 P.2d 255 (1968):

> "A motion for new trial upon the ground of 'newly discovered evidence' is not sufficient where it only tends to discredit or impeach the witness for the state and especially where it would not change the result of the trial."

Defendant's third proposition complains of the court's instruction number fourteen, which was a recitation of 57 O.S.Supp. 1968, § 138, titled "Credits for Good Conduct". At the time of defendant's trial, the Statute required that this section be read to the jury. Prior to its passage this Court had held that such reference was improper. See: Bean v. State, 58 Okl.Cr. 432, 54 P.2d 675. Later in Williams v. State, Okl. Cr., 461 P.2d 997, this Court held that the jury instruction requirement of Section 138, Title 57, was unconstitutional.

In this case defendant's trial was conducted in a two-stage proceeding. The second stage concerned only the question of punishment to be assessed, after the jury's verdict finding defendant guilty of the charge had been reached. In this case the District Attorney "pulled all stops" when he argued the question of punishment to the jury. Even if the instruction requirement of the Statute had not been found to be unconstitutional, because of the District Attorney's argument to the jury, modification of defendant's sentence would be required.

After referring to the instruction some of what the District Attorney argued is:

"That means on a ten year sentence, if he would behave in the penitentiary he gets 42 months handed back to him. His sentence is automatically cut 42 months, which is three and one-half years (3½) years off his sentence." (C.M.–254)

"When you say ten years, you are really saying six and one-half (6½) years, just to start with." (C.M.–255)

"When you say ten years you take three and one-half (3½) years off here, that leaves you six and one-half (6½) years; by the time you work and get ten days a month kicked off free twenty days for each pint of blood once a month, that is a total of thirty more days you are getting every month. You are cutting it in half. So when you start with ten and take 3½ years off, then you work and donate a pint of plasma every month, you are getting two days for one. So instead of six years it is a little over three years." (C.M.–255 & 256)

"But I think you should know when you say ten years what you actually are giving, that will boil down to three and one-quarter (3¼) actual years to serve." (C.M.–256)

After defense counsel presented his argument concerning the punishment, the District Attorney concluded his closing argument to the jury, as follows:

"When you go to the jury room keep in mind that the three and one-quarter years that you will sentence him on ten years, certainly is not excessive, and that the state requests that you give him the ten years that the verdict will read, which will be in fact, as Mr. May said, be three and a quarter years." (C.M.–258)

■ As indicated hereinbefore, this type of argument is improper under any circumstance; and it no doubt caused the jury much consternation and confusion when they attempted to reach the verdict of punishment; commensurate with the facts and circumstances of the case.

■ Defendant's fourth proposition asserts that the evidence upon which this conviction stands was circumstantial and thus falls within the rule announced in Pruitt v. State, Okl.Cr., 270 P.2d 351 (1954), but with this position we cannot agree. As the Attorney General's brief points out further, the Pruitt case was considered again on a subsequent appeal, reported as Pruitt v. State, Okl.Cr., 290 P.2d 424 (1955), and this Court stated:

"It has been held by this court that, where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the jury, and this court will not disturb its verdict for insufficiency."

The crux of this matter lies in the fact that the jury observed the demeanor of the witnesses as they testified and heard the testimony given, so notwithstanding the several quesionable aspects of the State's case, we are reluctant to disturb the jury's verdict finding the defendant guilty; however, after carefully considering the case-made before the Court and especially the prosecutor's argument concerning the amount of punishment which the defendant should receive, we feel compelled to modify defendant's sentence. Therefore, in view of the prosecutor's improper argument concerning punishment which only misled the jury and aroused their passions and prejudices the judgment and sentence is modified from ten years imprisonment, to three years imprisonment, and as modified the judgment and sentence in Pittsburg County District Court case No. 6172 is affirmed.

Judgment and sentence modified and affirmed.

NIX, J., concurs.

BUSSEY, J., not participating.