# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## JANUARY SESSION, 1998

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 02C01-9702-CR-00075** |
| **Appellee** | ) | |
| | ) | **SHELBY COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. James C. Beasley, Jr., Judge** |
| **MICHAEL DINKINS,** | ) | |
| | ) | **(Aggravated assault;** |
| **Appellant** | ) | **Theft under $500)** |

For the Appellant:

**Walker Guinn**
Assistant Public Defender
201 Poplar Street 2-01
Memphis, TN  38103

**A. C. Wharton, Jr.**
District Public Defender

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Elizabeth T. Ryan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**William Gibbons**
District Attorney General

**Lee Coffee**
Asst. District Attorney General
Criminal Justice Complex
Suite 301, 201 Poplar St.
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Michael Dinkins, was convicted by a Shelby County jury of aggravated assault and theft of property under $500. The trial court imposed consecutive sentences of four years for the aggravated assault conviction and eleven months and twenty-nine days for the theft conviction. In this appeal as of right, the appellant contends that: (1) the trial court erred by failing to properly instruct the jury regarding eyewitness identification as required by <u>Dyle</u>; and (2) the trial court erred by providing to the jury parole eligibility information.

After a review of the issues, we affirm the judgment of the trial court.

## Background

On December 13, 1995, Joseph Causley was on duty as a uniformed security guard at the MegaMarket Supermarket located on Poplar Avenue in Memphis. Sometime between 8:30 and 8:45 a.m., Causley, while observing surveillance cameras from behind a two-way mirror, noticed "a male black pushing a shopping cart [containing unbagged merchandise] through an [unmanned] cashier counter and outside the door." Causley followed the individual into the parking lot and identified himself as a security officer. The individual knocked over the shopping cart and fled. As Causley was placing the groceries back into the cart, the individual "came up out of nowhere and rushed [him] with some sharp object and stabbed [him] [in the abdomen]." Causley sprayed his attacker with pepper spray, which seemed to have no effect on the individual. The assailant attempted to stab Causley again, however, he was thwarted from a second attack when Causley drew his firearm. The assailant then fled the scene.

Causley immediately returned to the security office inside the store where he notified the police. The vicitim described his assailant as an African-American male wearing a brown coat, black pants, and carrying a black duffle bag. Within five minutes of the radio dispatch, Memphis Police Officer Tom Arnold observed a person walking westbound on Poplar, approximately one-half block from the MegaMarket, matching the description of the assailant. The suspect was arrested and a "pat-down" of his person revealed a "pair of folding type scissors" in the right pocket of his jacket. Officers then immediately transported the suspect back to the MegaMarket for identification by Causley. Causley, who was waiting to be transported to the hospital for treatment of his injuries, without hesitation, identified the suspect as his assailant. The suspect was later identified as the appellant.

At trial, evidence obtained from the MegaMarket videotape surveillance camera corroborated Causley's identification of the appellant as the perpetrator of the crimes charged. Causley underwent surgery and spent two days in the hospital for the injuries inflicted by the appellant. Based upon this evidence the jury found the appellant guilty of aggravated assault and misdemeanor theft.

## I. Failure to Provide Dyle Instruction

In his first issue, the appellant argues that the jury was not properly instructed on eyewitness identification. He raises as error the trial court's failure to give the Dyle instruction on identification. He concedes that the instruction submitted to the jury in this case is similar in many respects to the instruction mandated by Dyle, except that the instruction in the instant case omitted language that "[identification testimony is an expression of belief or impression by the witness. . . ." State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995). In response, the State correctly asserts that the appellant failed to raise this issue in his motion for new trial, see Tenn. R. App. P.

3

3(e), and that waiver of this issue is mandated. Nonetheless, we find this issue proper for review on the merits because the supreme court in Dyle made its ruling specifically applicable to all cases tried or on appeal as or after the date of its release.[1] Dyle, 899 S.W.2d at 612; see also Tenn. R. App. P. 2; Tenn. R. Crim. P. 52(b).

In State v. Dyle, the Tennessee Supreme Court promulgated an identity instruction which must be given in those cases where identification is a material issue and the instruction is requested by defense counsel. Id. The appellant requested that the Dyle instruction be given. Thus, our sole inquiry is whether identity is a material issue. "Identity will be a material issue when the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence." Dyle, 899 S.W.2d at 612, note 4. In the instant case, the appellant did not argue that he was not at the crime scene or that his identity was mistaken. The record reflects that the appellant presented no proof in his defense. Thus, he failed to place his identity in issue. Moreover, the victim, Joseph Causley, was an eyewitness to the commission of the offenses. His identification of the appellant as the perpetrator was sufficiently corroborated by the videotape from the surveillance camera of the MegaMarket. Cf. State v. Williams, 913 S.W.2d 462, 466 (Tenn. 1996) (holding that jury identification of defendant from surveillance photographs of crime scene is both constitutional and sufficient to establish identity). Accordingly, we conclude that the appellant's identity was not a material issue requiring that the Dyle instruction be given.

Additionally, we find that had the requested Dyle instruction been given, the instruction would have only served to strengthen the State's identification testimony. See State v. Bufford, No. 02C01-9509-CR-00275 (Tenn. Crim. App. at Jackson,

_____

[1]State v. Dyle was released on May 15, 1995. The appellant's trial began on June 25, 1996.

4

Mar. 19, 1997). Finally, we are cognizant of the fact that this court has implicitly approved this same challenged jury instruction on at least two prior occasions when identity was not a material issue. See State v. Franklin, No. 02C01-9511-CR-00340 (Tenn. Crim. App. at Jackson, June 2, 1997); State v. Williams, No. 02C01-9512-CR-00359 (Tenn. Crim. App. at Jackson, May 15, 1997). For the stated reasons, we conclude that, not only was the Dyle instruction not mandated under the facts of this particular case, but also that any error created by failing to give an instruction containing the precise Dyle language had no effect on the outcome and was harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## II. "Truth in Sentencing" Instruction

In his final issue, the appellant presents various challenges to the so-called "Truth in Sentencing" instruction codified at Tenn. Code Ann. § 40-35-201(b) (1996 Supp.). Basically, the appellant avers that the instruction is unconstitutional in that it violates, *inter alia*, the doctrine of separation of powers and his right to a fair trial under the due process clause. Although a previous panel of this court, in State v. King, No. 02C01-9601-CR-00032 (Tenn. Crim. App. at Jackson, Oct. 22, 1996), perm. to appeal granted, (Tenn. Mar. 10, 1997),[2] has held the "Truth in Sentencing" provision constitutional, for the reasons discussed herein, we conclude, pending resolution of this issue by our supreme court,[3] that the interjection of range of

---

[2]See also State v. Palmer, No. 01C01-9604-CC-00150 (Tenn. Crim. App. at Nashville, Nov. 20, 1997); State v. Cooper, No. 01C01-9604-CC-00150 (Tenn. Crim. App. at Nashville, Nov.. 17, 1997); State v. Howell, No. 01C01-9610-CR-00443 (Tenn. Crim. App. at Nashville, Nov.. 6, 1997); State v. Bradford, No. 01C01-9607-CR-00294 (Tenn. Crim. App. at Nashville, Sept. 30, 1997); State v. Gates, No. 01C01-9607-CR-00312 (Tenn. Crim. App. at Nashville, Sept. 30, 1997); State v. Majors, No. 01C01-9506-CR-00211 (Tenn. Crim. App. at Nashville, Jul. 30, 1997). But see State v. Weiskopf, No. 02C01-9611-CR-00381 (Tenn. Crim. App. at Jackson, Feb. 4, 1997); Cooper, No. 01C01-9604-CC-00150 (Hayes, J., separate concurring); Cooper, No. 01C01-9604-CC-00150 (Smith, J., separate concurring).

[3]We note that, regarding the present statute as amended in 1994, our supreme court has not specifically addressed the constitutionality of this statute. Moreover, despite argument to the contrary, State v. Cook, 816 S.W.2d 322 (Tenn. 1991), is not dispositive of the issue. In Cook, permission to appeal was granted as to the limited issue of whether the trial court committed prejudicial error by erroneously instructing the jury on the range of punishments of a Range I offender, where, in actuality, the defendant was a Range II offender. Cook, 816 S.W.2d at 324. Thus, the constitutionality of Tenn. Code Ann. § 40-35-201 (1990) was not before the court. The supreme court held that this section "gives a defendant a claimable statutory right to have the jury

punishment, coupled with the statutorily required minimum parole eligibility date, sentence reduction credits and the governor's power to reduce prison overcrowding, at the guilt phase of a trial, may be so unduly prejudicial to the determination of guilt that it renders the trial fundamentally unfair.[4][5]  See Tenn. Const. art I, § 8; State ex. rel. Anglin v. Mitchell, 596 S.W.2d 779 (Tenn. 1980).

Tenn. Code Ann. § 40-35-201(b) mandates that a trial court, in noncapital cases, upon request of either party, charge the jury with possible penalties for the offense charged as well as all lesser included offenses.  In 1994, the Tennessee General Assembly amended this provision by adding that the instruction shall also include "approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching the person's earliest release eligibility date," including the release eligibility percentage, maximum and minimum sentence reduction credits, the governor's power to reduce prison overcrowding, and the statement that "whether a defendant is actually released . . . is a discretionary decision made by the board of paroles. . .."  Tenn. Code Ann. § 40-35-201(b)(2)(A)(i), -201(b)(2)(A)(ii) (1994 Supp.) (emphasis added).

---

know the range of punishment applicable to the charges before deciding guilt or innocence." Cook, 816 S.W.2d at 326.  Although, the court, in dicta, alluded that "the Legislature . . . has the right and power to direct the judicial process," there is no express holding as to the statute's constitutionality.  Accordingly, we conclude that reliance upon Cook for challenges made to the constitutionality of Tenn. Code Ann. § 40-35-201(b), as amended in 1994, is misplaced.

[4]We acknowledge the trial court's extensive discussion of the statute presently at issue. In accordance with our holding, the trial court expressed great concern over the statute's unconstitutionality, specifically referencing the irrelevance of parole information to the jury's determination of guilt.  Nonetheless, the court noted that, if a party in a criminal proceeding requested the instruction, the statute required the court to provide the instruction.

[5]Judge Riley, in his concurring position, concludes that the substitution of the language "for your information" for the terms "weigh and consider" in the mandated instruction cures any constitutional defect in the statute.  We cannot agree with this position.  Once a statute is found unconstitutional, a member of the judicial branch cannot undertake to alter the instruction promulgated by the statute in an effort to make it constitutional.  This amounts to judicial amendment of legislation which violates the separation of powers doctrine as established in Article II, Section 2 of the Tennessee Constitution.  While it is the province and duty of the judiciary to interpret the law, the legislative branch has the exclusive power to formulate the law. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 194, 98 S.Ct. 2279, 2301-02 (1978); Richardson v. Young, 125 S.W. 664, 668 (Tenn. 1910).

6

Since the beginning of statehood, Tennessee juries were required to fix punishment in felony cases in addition to determining the guilt or innocence of the accused. The Criminal Sentencing Reform Act of 1982 bifurcated these functions and placed the sentencing determination with the trial judge. See Tenn. Code Ann. §§ 40-35-201(1982); 40-35-203(a)(1982). Thus, in Tennessee, as in most jurisdictions, the function of a jury in a criminal proceeding is limited to a determination of the defendant's guilt or innocence based solely on the basis of evidence introduced at trial and not on extraneous conditions not adduced as proof at trial. See Taylor v. Kentucky, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934 (1978) (citing Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691 (1976)). Parole is nothing more than post-conviction clemency; a condition subsequent to the accused's conviction, offered as a reward for the good behavior of the convict. For a jury to "consider and weigh" parole eligibility goes outside the facts of the case and is not germane to a determination of guilt or innocence. Clearly, an instruction on the law of parole constitutes an extraneous condition which is not substantive proof of the accused's guilt or innocence.

It is interesting to note that no other jurisdiction in America, other than Tennessee, permits introduction of parole eligibility information at the guilt phase of the trial. Of the six states that have retained jury sentencing, i.e., Arkansas, Kentucky, Missouri, Oklahoma, and Virginia, only three, Arkansas, Kentucky, and Texas, have found an instruction on parole eligibility at the sentencing phase of the trial constitutional.[6] See Teague v. State, 946 S.W.2d 670 (Ark. 1997); Boone v. Commonwealth, 780 S.W.2d 615 (Ky. 1989); Johnson v. State, 800 S.W.2d 563 (Tex. App. 1990). Moreover, constitutional amendment in Texas and statutory amendment in Arkansas and Kentucky were required before the jury could be instructed on these matters at the sentencing phase. See, e.g., TEX. CONST. art. IV,

_____

[6]Each of these six states has a bifurcated trial procedure whereby after a determination of guilt, a separate sentencing hearing is held before a jury with the jury determining the appropriate punishment. Moreover, we note that, effective 1995, Virginia has abolished parole.

§ 11(a) (amended November 7, 1989); Ark. Code Ann. § 16-97-103 (1995 Supp.); Ky. Rev. Stat. Ann. § 532.055 (Banks-Baldwin 1995). Additionally, these six jurisdictions have routinely rejected the introduction of parole eligibility information before the jury for a variety of reasons, including, but not limited to: **violation of the separation of powers** doctrine, i.e., the mandatory "truth-in-sentencing" instruction is an attempt by one branch (the legislative) to direct another branch (the judiciary) to interfere with the powers of yet a third branch (the executive), see, e.g., Kemp v. State, 632 P.2d 1239 (Okla. Crim. App. 1981); Rose v. State, 752 S.W.2d 529 (Tex. Crim. App. 1987), *superseded by constitutional amendment*, Johnson, 800 S.W.2d at 563; Walker v. Commonwealth, 486 S.E.2d 126 (Va. App. 1997); and various aspects of fundamental fairness, for instance, **speculation about a future event**, see, e.g., Huff v. Commonwealth, 763 S.W.2d 106 (Ky. 1988) (Leibson, J., dissenting) (citing State v. Farris, 535 S.W.2d 608 (Tenn. 1976)); Walker, 486 S.E.2d at 126; **extraneous condition to determination of guilt**, see, e.g., State v. Rollins, 449 S.W.2d 585 (Mo. 1970); Beans v. State, 54 P.2d 675 (Okla. Crim. App. 1936); a **condition subsequent to conviction**, see, e.g., Cox v. State, 491 P.2d 357, 359 (Okla. Crim. App. 1971); and **relevancy**, see, e.g., Walker, 486 S.E.2d at 126.

Moreover, guidance by the Tennessee Supreme Court as to the propriety of such instructions is provided in State v. Farris, 535 S.W.2d at 608. Justice Henry, speaking for the court, in Farris, wrote:

> Jurors should not be permitted to speculate on the length of sentences, discretionary parole, the accumulation of good and honor time and a whole conglomeration of contingent events which, if they come to pass at all, will come to pass in the future. Very heavily involved is the constitutional right of a defendant to a fair trial.
>
> . . . It tends to make a jury speculate on the length of time a convicted defendant will be required to serve and further tends to breed irresponsibility on the part of jurors premised upon the proposition that corrective action can be taken by others at a later date. A greater defect in the law stems from the fact that jurors tend to attempt to compensate for future clemency by imposing harsher sentences.

8

> The matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration by a jury in determining the length of his sentence.

Farris, 535 S.W.2d at 614. Contrary to the holding in King, No. 02C01-9601-CR-00032 (holding Farris inapplicable to the present issue), we conclude that subsequent statutory amendment fails to dissipate the constitutional concerns expressed in Farris.

It is inconceivable to assume that information regarding parole eligibility information before the jury during the guilt phase of a trial will not have an effect, in certain factual situations, on their finding the defendant guilty of the greater or lesser offense. Clearly, it is improper for a jury to impose a harsher conviction than they believe is merited by the proof presented for the sole purpose of having a defendant serve a sentence they believe to be warranted. A jury is not to concern itself with post-conviction events. We can find no rational basis for concluding that information regarding parole eligibility is relevant to the jury's consideration at a non-capital criminal trial. But see California v. Ramos, 463 U.S. 992, 103 S.Ct. 3446 (1983) (holding that federal constitution does not prohibit capital sentencing jury from considering governor's power to commute life sentences).

Parole is not a judicial function, rather it is an executive function. It is best that the correctional authorities and not the jury be left to commence the process of rehabilitation. A jury charge which instructs on punishment and parole eligibility will invariably result in unjust verdicts and may prejudice either the accused or the State's right to a fair trial, depending upon the particular facts and circumstances of the case. Accordingly, we find that the statutorily mandated jury instruction at the guilt phase of trial violates due process as secured by Article I, Section Eight of the Tennessee Constitution.

9

Having determined that the jury instruction mandated by § 40-35-201(b) is unconstitutional, it remains that we must next determine the appropriate standard of harm analysis to be applied to the facts of this case. Generally, appellate review of error in criminal cases is a two-step process. First, the reviewing court determines what, if any, error occurred in the trial. Second, the court must determine whether the error requires reversal. In the present case, we are confronted with the issue of whether the error of applying a constitutionally infirm statute is reversible error.

The United States Supreme Court, in Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827 (1967), determined that all constitutional error is not harmful in that there may be some constitutional errors, which in the setting of a particular case, are so unimportant and insignificant that they may be deemed harmless, not requiring reversal. See also State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991). The Court pronounced that the test to determine harmful error is whether "there is a reasonable probability that the [error] complained of might have contributed to the conviction ." Chapman v. California, 386 U.S. at 23, 87 S.Ct. at 827; see also Bobo, 814 S.W.2d at 356. If the reviewing court finds that the complained constitutional error did not affect the outcome of the trial, then the error is harmless.

Applying this standard to the present case, the evidence points overwhelmingly to the guilt of the appellant for the offense of aggravated assault by the use of a weapon. The victim identified the appellant as the perpetrator. This testimony was corroborated by the surveillance videotapes provided by the MegaMarket security cameras. Additionally, five minutes after the victim notified law enforcement officials of the incident, the appellant was located approximately one-half block from the MegaMarket. Upon a search of the appellant's person, police officers discovered a pair of scissors in his right front pocket. These facts are not challenged by the proof. Thus, there is no dispute as to the grade of assault committed. We are led, beyond a reasonable doubt, to the conclusion that the

statutory parole eligibility instruction made no contribution to the jury's verdict. Accordingly, any error in providing the unconstitutional instruction was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## III.  Conclusion

After a review of the record, we find that the trial court did not err by failing to provide the Dyle instruction on identity.  Moreover, although we find the statutorily mandated jury instruction on parole eligibility unconstitutional, under the facts and circumstances of the present case, we are unable to conclude that the instruction constituted reversible error.  Accordingly, the judgments of the trial court are affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOE B. JONES, Presiding Judge


_____
JOE G. RILEY, Judge

11