## JACK W. COSBY v. STATE.

No. A-10753.    Nov. 12, 1947.
(186 P. 2d 844.)

160

Welch, Bounds & Kile, of Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Victor C. Phillips, Co. Atty., of Durant, for defendant in error.

BAREFOOT, P. J.   Defendant, Jack W. Cosby, was charged in the district court of Bryan county with the crime of wife and child abandonment; was tried, convicted and sentenced to serve a term of ten years in the State Penitentiary, and has appealed.

For a reversal of this case it is contended:

"(1) The information is duplicitous in that two separate offenses, i. e., (1) abandonment of wife, and (2) abandonment of child under the age of 3 years, are charged in the information.

"(2) Error of the court in refusing to submit the defendant's requested instruction No. 2 relating to proof of paternity of minor child born out of wedlock, who is alleged to be the child of the defendant.

"(3) The error of the court in submitting instruction No. 4, relating to the bond and probationary provisions of the Penal Code whereby a person convicted on such a charge might completely escape imprisonment upon conviction.

"(4) Error of the trial court in refusing cross-examination of prosecuting witness as to her prosecution of a bastardy proceeding against another man in the year 1929.

"(5) The evidence was insufficient to warrant a conviction of wife abandonment."

Under the first proposition, it is contended that the information is duplicitous for the reason that it charges two separate offenses, (a) abandonment of wife; and (b) abandonment of child under the age of three years.

The statute under which the information was prepared is 21 O. S. 1941 § 853, which provides:

"Every person who shall without good cause abandon his wife in destitute or necessitous circumstances and neglect and refuse to maintain or provide for her, or who shall abandon his or her minor child or children under the age of fifteen years and wilfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a felony and upon conviction thereof, shall be punished by imprisonment in the State Penitentiary for

any period of time not less than one year or more than ten years." ,

The charging part of the information is as follows:

"That is to say, the defendant did in said county and state, at the date above named, unlawfully, wrongfully, knowingly, wilfully and feloniously desert and abandon his wife and minor child while they were in necessitous and destitute circumstances, said minor child, to-wit Linda Lou Cosby, being under the age of three years, and the said Jack W. Cosby has wholly failed and refused, and still fails and refuses to provide for and maintain said wife and minor child; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

This court has decided the question here raised adversely to defendant's contention in the case of Brown v. State, 33 Okla. Cr. 217, 242 P. 1065, 1067. While in that case no demurrer to the information was filed, as in the instant case, the court said:

"The second assignment is that the court erred in overruling the objection of the defendant to the introduction of testimony on the part of the state, for the reason that the information is duplicitous, in that it attempts to charge more than one offense. It is urged that the statute creates the crime of wife abandonment, also creates the crime of child abandonment, and that the abandonment, of either would be a separate and distinct crime under the state; that, if the information here charges a crime at all, it charges two.

"The function of a demurrer which was not resorted to by the defendant is to defeat the information without a trial, whenever it appears upon the face thereof that it is subject to one or more of the five objections named in the statute. Code of Crim. Proc. section 2608, C. S. 1921 (Tit. 22 O. S. 1941 § 504). These objections can be taken only by demurrer, except:

" 'That the objection to the jurisdiction of the court over the subject of the indictment or information, or that the facts stated do not constitute a public offense, may be taken at the trial, under the plea of not guilty, and in arrest of judgment.' Id. § 2616. (Tit. 22, O. S. 1941 § 512.)

"It follows that the question is not presented by the record. However we are of the opinion that there is no merit in this contention. The rule is well settled that, when a statute makes it an offense to do some one or another act, naming them disjunctively, either of which would constitute one and the same offense, and amenable to the same punishment, all the acts may be charged conjunctively in the one count as constituting a single offense."

See, also, Goodart v. State, 65 Okla. Cr. 472, 88 P. 2d 911, Davis v. State, 40 Okla. Cr. 231, 267 P. 674; Sherman v. State, 19 Okla. Cr. 269, 200 P. 262.

It is next contended that the court erred in refusing to give defendant's requested instruction No. 2, which was as follows:

"Gentlemen of the jury, you are instructed that under the evidence in this case the child, Linda Lou Cosby, was born out of wedlock and there is no presumption that the defendant is the father of the said child, and in this connection you are instructed that in order to convict the defendant of abandoning said child, and for failure and refusal to support her, you must find from the evidence beyond a reasonable doubt that the defendant is the father of said child."

The court in lieu thereof gave the following instruction:

"7. Gentlemen of the jury, you are instructed that in order to convict the defendant for abandonment of the child you must find and believe from the evidence beyond a reasonable doubt that the defendant is the father of said child."

An examination of the record discloses that the child in question was born in a hospital at Richmond, California, on July 19. 1943, and that the mother of the child and defendant were married at McAlester, Oklahoma, on December 20, 1944. The evidence amply sustains the finding that the defendant was the father of the child, Linda Lou Cosby.

It is provided by 10 O. S. 1941 § 2:

"* * * A child born before wedlock becomes legitimate by the subsequent marriage of its parents."

Letters introduced in evidence written by defendant to the prosecuting witness while she was in California, and the testimony, clearly justified the jury in reaching the conclusion that the defendant was the father of Linda Lou Cosby. He admitted on cross-examination that he lived with the prosecuting witness and for a period of ten or twelve years prior to sending her to California had had intercourse with her, and that she went under his name.

In the case of Brooks v. State, 59 Okla. Cr. 421, 60 P. 2d 805, 806, it is said, in the first paragraph of the syllabus:

"Where the court in its general instructions correctly advised the jury as to the law applicable to the facts in the case, it is not error for the court to refuse to give special instructions requested by the defendant covered by the court's instructions."

It is next contended that the court erred in giving instruction No. 4. This is the most serious proposition presented. The instruction is too long to copy in this opinion. It may be stated that it is based upon 21 O. S. 1941 § 855, which follows section 853 quoted above, and provides that upon conviction of one for wife and child abandon-

ment a parole may be given by the Governor under certain conditions, upon recommendation of the judge trying the case. After giving this procedure, the court, in the concluding part of the instruction, states:

"In this connection you are instructed that in your verdict you shall only determine the guilt or the innocence of the defendant, and the period of time he shall serve as a penalty; and the question of the giving of bond for the payment of money to the said minor child and his parole by the Governor are questions of procedure that are not submitted to you herein. Notwithstanding this provision of the law, the defendant should not be convicted here unless the jury are satisfied, by competent evidence beyond a reasonable doubt, that he is guilty in manner and form as charged in the information."

An instruction in almost identical words in a child abandonment case was before this court in the case of Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914, 918; and see also Goodart v. State, supra. In the Cowley case, the instruction is quoted in the opinion. The court, in an opinion by Presiding Judge Doyle, came to the conclusion that it was not the proper practice for the court to submit to the jury an instruction such as was given in this case. However, the court, after considering such instruction, said:

"The court is firmly committed to the rule that an instruction improper and erroneous will not be held reversible error where it is manifest, on consideration of all the instructions given, the testimony in the case, and the verdict of the jury, that such an instruction did not work to the prejudice of the defendant, or deprive him of any substantial right.

"Upon the record before us we are of the opinion that the giving of said instruction did not constitute prejudicial error."

The court in the Cowley case considered and reviewed the case of Bean v. State, 58 Okla. Cr. 432, 54 P. 2d 675, 677, which is cited and relied upon by defendant in the instant case. In that case, the defendant was charged with the crime of murder, and was convicted of manslaughter in the first degree, and given a sentence of 15 years in the penitentiary. In that case, the court instructed the jury that if the defendant was convicted of a felony and received a prison sentence, he would not necessarily have to serve the imprisonment imposed for the reason that the laws of this state make provision for commutation of time for good behavior. The court then gave to the jury a table showing the time given convicts for good behavior after their incarceration in the penitentiary. This instruction was predicated upon sec. 5341, O. S. 1931, Tit. 57 O. S. 1941 § 138.

The court, in the body of the opinion in the Bean case, said:

"The instruction complained of is a section of our statute found under the title of 'Instructions' governing our penitentiary and reformatory. Under the provisions of the section herein quoted, it is clearly shown that it provides for a condition subsequent to the conviction and sentence and is not germane to the question involved in the trial of the defendant as to the guilt or innocence, but provides for conditions subsequent to conviction and after the party has been incarcerated in our penitentiary or reformatory. It is offered as a reward for good behavior of the convict.

"We have searched in vain to find where any court in the trial of a defendant has instructed the jury that when a defendant is convicted of a felony and received a prison sentence as a punishment therefor he does not necessarily serve the entire term of punishment imposed, for

the reason that the law makes a provision of commutation of time for good behavior.

"Under the statutes of Oklahoma when the court has instructed the jury as to the law as applied to the evidence in the case, it has discharged its full duty under its oath and the law; and when that duty has been fully discharged, the court goes outside of the facts in this case and gives the instruction herein complained of, it committed an error prejudicial to the rights of the defendant. However, it will be seen in this case that the evidence clearly shows that no one had an opportunity to strike the fatal blow that took the life of the deceased but this defendant, and the evidence is amply sufficient to convict the defendant of manslaughter in the first degree. The evil growing out of the instruction complained of can readily be seen for the reason that no provision is made for any one in authority other than a ministerial officer of the state penitentiary or reformatory to say whether or not the prisoner had a good record. Should the prisoner for any reason commit a slight infraction of the rules of the prison or incur the enmity of the warden or any one having supervision over him, a report could be made reporting that the prisoner had broken the rules and regulations and was not entitled to good time, and the prisoner would be compelled to serve out his entire term for which the court and the jury convicted him.

"It is clear the enacting of the statute for commutation for good behavior was never intended by the Legislature to be considered by the jury in the trial of the defendant, on the question of his guilt or innocence, or the punishment imposed by the jury. The instruction complained of as error only goes to the question of the commutation of the defendant after he has been convicted and incarcerated.

"This court has many times held that it is not every erroneous instruction that entitles a defendant to reversal, and especially so as in this case, where the testimony clearly shows the defendant guilty of manslaughter in the first degree, the instruction opened the way for the

jury, and perhaps did cause it to impose a greater sentence on the prisoner than it would have imposed had the instruction not been given.

"Considering all the facts and circumstances in the case, and the fact of the testimony showing the guilt of the defendant of manslaughter in the first degree, we do not think that the erroneous instruction given entitles the defendant to have his case reversed. However, we believe the giving of the instruction caused the jury to impose a greater punishment on the defendant than it would otherwise have given, and that the judgment of fifteen years should be modified to seven years."

In the Cowley case, supra, following the case of Bean v. State, supra, the judgment was modified, by reason of the error above mentioned, from a term of ten years to a term of seven years.

Following the decisions in the above cases, and adopting the reasons therein stated, we are of the opinion that it was error to give instruction No. 9, in the instant case, but that the error only caused an increased punishment to be assessed against the defendant. We are also of the opinion that the punishment of the defendant in this case should be modified from a term of ten years in the penitentiary, to a term of five years therein.

The fourth assignment of error has reference to sustaining an objection to a question propounded to the prosecuting witness on cross-examination. We have carefully examined the record with reference to this matter, and are of the opinion that the objection to the question should not have been sustained. However, the question went to the credibility of the witness. There was other evidence before the jury, which the jury could have considered in weighing the credibility of the prosecuting witness. This evidence was of the same nature and substance as that

rejected. In view of the fact that the judgment and sentence in this case is to be modified, we do not consider this error was prejudicial to the defendant to the extent of justifying a reversal of this case. Keltner v. State, 52 Okla. Cr. 150, 3 P. 2d 451.

The fifth assignment of error challenges the sufficiency of the evidence to show a willful and felonious abandonment of the wife of defendant. This necessitates a short review of the evidence.

Defendant and the prosecuting witness commenced going together in 1930 or 1931. This continued for a period of nearly 15 years. During that time the prosecuting witness lived in southeastern Oklahoma, and defendant worked for different railroads, but they were often together, and she went with him to different places. Just prior to the birth of the child, Linda Lou, defendant sent the prosecuting witness to California, purchasing a ticket for her transportation. She had a brother in that state, and one in Oklahoma. There was quite a bit of correspondence between the defendant and the prosecuting witness, but it is unnecessary to unduly lengthen this opinion by quoting therefrom. The prosecuting witness was taken to the hospital in California, and a baby girl was born by a caesarean operation on July 19, 1943. Defendant was notified both before and after this occurrence. His letters to the prosecuting witness are in endearing terms, and contained promises to come to California at an early date and fully recognized that he was the father of the child, and expressed his desire to see it, etc. He signed and gave his written consent to the operation. But the evidence revealed that he did not go to California as promised, and that he did not pay for the operation or the doctors' bills, and that her brother who lived in California had to

advance her money to return to Oklahoma. Upon her return to Oklahoma, defendant refused to take care of her and her baby, although he was working for the railroad and owned property. In desperation she filed bastardy charges against the defendant, in Bryan county, in March, 1944. While these charges were pending, defendant was making effort to have them dropped. During this time a conversation was had between defendant and the prosecuting witness, and it was agreed that they would meet in McAlester, in Pittsburg county, on December 20, 1944. On that date they were legally married, and spent one night together in the Aldridge Hotel. As a result of this marriage, the bastardy proceedings in Bryan county were dismissed.

After the marriage at McAlester, defendant sent the prosecuting witness to Durant, giving her $10 at that time. She has lived there since, and defendant has never contributed anything to her support and maintenance, or to that of the child. By reason of the operation, she has been unable to work, and her brother, who was in the service during World War II, and a prisoner in Germany, has contributed about $50 per month out of his salary and bonds from the Government to support and maintain them.

In February, 1944, defendant filed a suit for divorce at Ada in the district court of Pontotoc county. The prosecuting witness employed counsel to defend this suit. At the hearing, the district judge ordered the defendant to pay $75 per month, $125 suit money, and $100 temporary attorney's fees. When this order was made, the case was dropped and no further order was made therein. At no time has defendant ever in any way complied with the order of the court, and has paid none of the money as ordered. When asked on cross-examination in the trial of

this case why he had not paid, his answer was that he heard the court say: "Until the further order of the court," and that he thought the court meant that the judge would order him to pay in the future, and he had never done so. He at no time consulted his lawyer to find out his duty with reference to the order.

The present case was commenced in the district court of Bryan county on October 2, 1945; the charging part of the information and statute under which the charge was brought are set forth herein.

The statute here involved was enacted in this state (and similar ones have been enacted in many states of the Union), for the purpose of punishing a father who fails to support his child or a husband who fails to support his wife. Some courts in construing statutes of like character have expressed the thought that they were enacted for the purpose of redressing a public grievance, and thus relieve the public from the burden of caring for a helpless child, or an indigent wife. Other courts have held that these statutes are really designed for the benefit of the wife and child in addition to the remedies offered by civil proceedings.

In the case of State v. Gillmore, 88 Kan. 835, 129 P. 1123, 1126, 47 L. R. A., N. S., 217, it is said:

"The object of the statute was to compel the husband, if he were able to do so, to support his wife and children."

We are in accord with this statement. The evidence in this case shows a wanton disregard on the part of this defendant to support and maintain his wife and minor child, although abundantly able to do so. His mistreatment of her for a period of ten or twelve years and from the time she was a young girl 17 years of age, his sending her

away to the State of California just prior to the birth of their child, his refusal to pay the expenses during the time of the birth of the child, and her expenses to return to the State of Oklahoma, are a shame and a disgrace, and when you add to this defendant's refusal to live with her, and provide a home for her and their child, after their return, and his failure to give one cent for their support and maintenance, you have seen broken every obligation of the law of both God and man. It is indeed a lame excuse for one to say, under these circumstances, that "she promised to immediately divorce me if I would marry her and give her little girl a name." One cannot believe that anyone could so far forget his obligation to support his offspring. The child, helpless in its infancy, "and required in the early years of its minority to obey the reciprocal duty of serving its parents," should not be deprived of its natural and legal right of protection and support by its father. This is certainly true, notwithstanding any family quarrel or any agreement between husband and wife. It has no say in any divorce proceedings, and is not barred of any right by any decree entered therein.

In the body of the opinion in the Gillmore case, supra, the court quotes from the case of Spencer v. State, 132 Wis. 509, 112 N. W. 462, 122 Am. St. Rep. 989, 13 Ann. Cas. 969, and says:

" 'We are of opinion, however, that the clause in question may well be justified as providing an appropriate punishment for an aggravated case of abandonment or failure to support.' The penalty is severe; but evidently the Legislature believed that this very feature would act as a deterrent to faithless husbands and pitiless fathers, who might be tempted to leave wife and child without support or care. Its severity need trouble no one who possesses sufficient manhood and decency to entitle him to remain outside prison walls."

In connection with this case, we call attention to 21 O. S. 1941 § 855, supra, which provides for a parole by the Governor of one convicted by reason of a violation of such section, as was this defendant, by the payment of certain monthly payments as provided therein for the support and maintenance of his wife and child, such payments to be secured by the giving of good and sufficient bond as provided by the terms of said section.

It will thus be noted that this defendant carries the keys for his release from the sentence imposed in this case. The statute under which defendant was convicted is a wholesome one for the enforcement of a deserved right. We have often insisted upon prosecution for other offenses, and have too often forgotten that the abandonment and failure to support one's own offspring is a crime not only against society, but an irreparable injury to the children of this state.

The judgment of the district court of Bryan county is affirmed, as modified, from a term of ten years to a term of five years in the State Penitentiary.

JONES and BRETT, JJ., concur.