**Bobby Lynn ROSS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–83–780.

Court of Criminal Appeals of Oklahoma.

April 4, 1986.

Rehearing Denied April 28, 1986.

Thomas G. Smith, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Bobby Lynn Ross, was convicted in the District Court of Roger Mills County, Case No. CRF–83–27, after a change of venue had been granted from Beckham County, Case No. CRF–83–2, of Murder in the First Degree, and Robbery with a Firearm, for which he received sentences of death, and ninety years' imprisonment, respectively. From these judgments and sentences, he appeals.

The facts are that about 1:50 a.m. on January 5, 1983, the night clerk at the Los Cuartos Inn located in Elk City, Oklahoma was robbed by two black men, one of whom was later identified as being the appellant. After the first man left, and before the appellant could leave, a police officer, Sargeant Steven Mahan, pulled up in his vehicle on a routine check and was shot three times in the head by the appellant. Officer Mahan was pronounced dead about three and a half hours later at El Reno Hospital. The vehicle in which the appellant and two other men were riding was stopped at the intersection of Interstate 40 and Highway 83 south of Clinton about twenty-five minutes after the shooting by two Clinton police officers who observed that that vehicle had an unsafe windshield and a defective taillight. The suspects were subsequently arrested.

As the first assignment of error, the appellant alleges that his initial arrest was predicated on an unwarranted stop and frisk and that therefore the evidence secured as a result of that arrest should be excluded. The facts show that about 2:22 a.m. the police dispatcher at the Elk City Police Department broadcasted the description of the two suspects of the Los Cuartos Inn robbery, including race, height, and clothing of each of the suspects, one dressed in gray, the other in black. The information was received by the Clinton Police Department, and as a result, Offi-

cers Lumpkin and Dover positioned their vehicle on Highway 183 overpass above Interstate 40. About 2:26 a.m. they observed a vehicle with a broken taillight and a cracked windshield come from the west on I–40 and turn north onto Highway 183. The officers stopped the vehicle.

■ The first issue is whether or not the stop of the vehicle was lawful. Title 47 O.S.1981, § 12–101 provides that the operation of an unsafe vehicle on any highway is a misdemeanor. The statutes further provide that a peace officer may, without a warrant, arrest a person for a public offense committed in his presence [22 O.S. Supp.1985, § 196(1) ]. Observation by Officer Lumpkin of a vehicle being operated on a state highway with a defective taillight and unsafe windshield certainly justified the stop of the vehicle.

■ The second issue is whether or not the officers could lawfully frisk the appellant. Officer Lumpkin stated that he recognized the driver and the passenger in the back seat, both of whom he knew to have carried firearms in the past. This circumstance, together with the facts that the driver behaved suspiciously, by placing his hands on the hood in the position for a frisk search without being instructed to do so, two of the men fit the description of the Elk City robbery suspects, and arrived in Clinton within the time it would take to drive from Elk City, leads to the conclusion that the officers reasonably inferred from specific and articulable facts that the intrusion (the frisking of the three occupants of the vehicle) was justified. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The third issue is whether or not the pistol seized from the appellant was properly admitted in his prosecution. We conclude that it was. At the time the weapon was seized, Officer Lumpkin had reasonable grounds to believe that the appellant was armed and dangerous, and it was necessary "to take swift measures to discover the true facts and neutralize the threat of

harm if it materialized." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884.

The final issue is whether or not the confession was the fruit of an illegal arrest and therefore should have been excluded on those grounds. As we have found that the search was legal, we find that the arrest was also legal as it followed the discovery of a concealed weapon, which act is unlawful. (21 O.S.1981, § 1289.8). The confession which followed cannot be said to be the fruit of an illegal arrest.

We therefore conclude that this assignment of error is without merit.

As his second assignment of error, the appellant complains that the trial court improperly excluded three jurors in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), who had reservations concerning the death penalty and failed to exclude a juror who would automatically vote for the death penalty if the appellant was found guilty.

█ Upon the issue of excluding jurors, the rule is clear that a prospective juror who is irrevocably committed, prior to trial, to vote against the death penalty may be properly excluded. *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984). Prospective juror Webb was asked if she felt there were no circumstances under which the death penalty would be allowed, and she answered "That's correct." Prospective juror Stacher was asked by defense counsel if it was a fair statement that under no circumstances would she ever give the death penalty, and she responded, "That is a fair statement." Prospective juror Sanve was asked if in a case where the law and evidence warranted, he could without doing violence to his conscience, recommend the death penalty, and he stated, "I couldn't." Almost an identical question was asked in *Koonce v. State,* 456 P.2d 549, 555 (Okl.Cr.1969), *modified,* 408 U.S. 934, 92 S.Ct. 2845, 33 L.Ed.2d 748 (1972), of a prospective juror as that asked Sanve, and we found that the jury was correctly selected. The questioning of these three jurors reveals that they could not have agreed in a proper case to even consider a verdict imposing the death penalty, and therefore this contention is without merit. *See Wainwright v. Witt,* 469 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

█ Upon the issue of failure to exclude a juror who would automatically vote for the death penalty, the facts show that one prospective juror stated twice that he would automatically vote for the death penalty if he found the defendant guilty of murder. Once a defendant has been found guilty, the duty of the jurors is to hear and determine evidence in aggravation and in mitigation, and to consider whether the evidence in aggravation outweighs the mitigating circumstances or whether the mitigating circumstances outweigh the aggravating circumstances. 21 O.S.1981, § 701.-11. The failure of the trial court to remove a prospective juror who unequivocally states that he is unwilling to follow the law during the penalty phase by considering a life sentence is error. *See Stroud v. United States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), *reh. denied,* 251 U.S. 380, 40 S.Ct. 176, 64 L.Ed. 317 (1920). *See also Alvord v. Wainwright,* 564 F.Supp. 459 (1983), *aff'd. in part, rev'd in part,* 725 F.2d 1282 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). The record reflects that defense counsel challenged the prospective juror for cause, and when the court denied the challenge, defense counsel used a peremptory challenge. All of appellant's peremptory challenges were subsequently used; but as there is nothing in the record to show that any juror who sat on the trial was objectionable, we are unable to discover any grounds for reversal. *See Stroud* and *Ferrell v. State,* 475 P.2d 825 (Okl.Cr.1970). We therefore find this assignment of error to be without merit.

█ As his next assignment of error, the appellant cites two instances during the trial in which evidence of other crimes was injected and complains that these instances interfered with his right to a fair and impartial trial. In the first instance, Undersheriff Jameson testified that Mike Snow's

part in the taped interrogation was on the subject of prior felony convictions. The trial court sustained an objection to that line of questions, but no request that the jury be admonished was made, so this issue is not properly preserved for appellate review. *See Hickman v. State*, 626 P.2d 873 (Okl.Cr.1981). In the second instance, during the playing of the recorded confession of the appellant in the jury's presence, the interrogating officer inquired concerning a rape charge which the appellant corrected as an "indecency of a child." After the tape concluded, defense counsel requested that the jury be admonished, but the court stated that a written instruction would be submitted to the jury on that subject. The appellant complains that the instruction allowed the jury to consider evidence on the issue of intent, knowledge or identity when the State had filed no notice under *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). But there was no objection to the instruction. Furthermore, the appellant's requested instruction was identical except it would have allowed the jury to consider the evidence on the issue of motive, intent and plan. As there is no significant difference between the two instructions, and the limiting instruction concerning other crimes evidence was properly given, the appellant has not been prejudiced, especially when the evidence of guilt was so overwhelming.

Appellant next urges that the evidence was insufficient to support his conviction for robbery with a dangerous weapon, and the trial court erred in failing to instruct on first degree robbery. The facts show that appellant's accomplice poked Ms. Sandefur in the back with what he said was a gun, and then threatened to shoot her if she did not cooperate. She further observed that his hand was outside his jacket, wrapped around something which caused the pocket of the jacket to protrude, and that object was sticking her in the back. Later, while leaving the motel, appellant shot to death a police officer and was found in possession of that same gun when arrested. Another gun was also found in the car. Where there is evidence, although circumstantial, to support the jury's ver-

dict, it will not be disturbed by this Court. *Fields v. State*, 666 P.2d 1301 (Okl.Cr. 1983). The facts before us are more than sufficient for an inference that appellant and his accomplice were armed with firearms during the robbery, and so we find this contention to be meritless.

We further find that the trial court did not err in failing to instruct on first degree robbery. An instruction concerning an included offense is not necessary when the facts do not justify it. *Jefferson v. State*, 675 P.2d 443 (Okl.Cr.1984). We must also note that we have no record of an objection in the omission of the instruction, nor did the appellant's attorney submit a requested instruction on first degree robbery, even though he submitted thirty-six requested instructions. Where an appellant fails to interpose an objection to the court's instructions, or to submit instructions designed to correct any improprieties or inadequacies in the court's instructions, any errors in those instructions are waived. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). We therefore find this assignment of error to be without merit.

Similarly, the appellant argues that the trial court committed reversible error by refusing to give appellant's requested instructions on second degree felony murder and first degree manslaughter. Second degree felony murder is not a lesser included offense of premeditated murder, which was the offense charged, and we have found that the trial court did not err in failing to instruct on first degree robbery, which is the underlying felony to support second degree felony murder. Therefore, an instruction on second degree felony murder would have been improper. Concerning the manslaughter instruction, the facts show that the appellant shot Officer Mahan three times in the head; two of the wounds were made at close range. Appellant admits that the officer did what he was ordered to do, but appellant shot him anyway. As support for the instruction, appellant points to the portion of his statement in which he asserted that he merely

wished to wound the officer so that he could not get up and shoot one of the robbers. The issue is whether or not this statement, together with his expressions of regret after the incident, is enough to support a first degree manslaughter instruction. These self-serving statements alone are not sufficient to require the trial court to give the appellant's instruction. *See Lumpkin v. State*, 683 P.2d 985 (Okl.Cr. 1984).

As his next assignment of error the appellant alleges that the trial court failed to compel compliance with the State's offer of a negotiated plea and to allow the appellant to offer evidence of the negotiated plea in mitigation during the second stage proceedings. The facts show that an agreement had been made between one of the prosecutors and defense counsel for the appellant to plead guilty in exchange for two life sentences. The offer was later withdrawn and the appellant filed a motion to compel compliance with the agreement, which was denied. There is no absolute right to have a guilty plea accepted, nor even a constitutional right to plea bargaining. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and *Gray v. State*, 650 P.2d 880 (Okl.Cr.1982). Furthermore, appellant does not allege that he was prejudiced by the withdrawal of the offer. Therefore, this assignment of error is meritless.

Appellant also alleges that he should have been allowed to offer evidence of the negotiated plea agreement as a mitigating circumstance. The trial court properly refused to allow the evidence to be presented. Allowing a defendant to use plea negotiations in mitigation would clearly discourage plea negotiations in capital cases as prosecutors would correctly fear that during the second stage proceedings, they would be arguing against themselves. Plea bargaining is to be encouraged, not discouraged (*See Santobello*), and therefore is improper evidence to present in mitigation.

We next turn to the appellant's allegation that the trial court committed error in failing to sustain a motion made prior to the second stage of trial, which sought to prohibit the prosecutor from questioning the appellant concerning a Texas homicide for which the appellant had neither been tried nor convicted. As this ruling preceded the second stage of trial, it is analogous to a motion in limine, which is merely advisory. *Nealy v. State*, 636 P.2d 378 (Okl.Cr.1981). To properly preserve such an error for review the appellant should have made an offer of proof at the proper point during the trial in order to reveal the substance of the evidence which he desired to present. Without such offer, we cannot determine if the alleged error has adversely affected a substantial right of the appellant. *See* 12 O.S.1981, § 2104. *See also Nealy*.

The appellant argues in another assignment of error that the State failed to provide him with complete notice of the aggravating circumstances, and the supporting evidence it intended to use.

First, he complains that the Bill of Particulars failed to comply with 21 O.S.1981, § 701.10 which requires that evidence in aggravation be made known to the defendant prior to trial. He alleges that there was no clear reference to the aggravating circumstance that the victim of the murder was a police officer. An examination of the Bill of Particulars reveals that paragraph four clearly states that the victim was "a uniformed acting officer of the Elk City, Oklahoma, Police Department, ... killed while in the performance of his official duties." We find that this complies with the statute.

Second, he complains that the State failed to give adequate notice of the evidence it intended to use to support the aggravating circumstance of being a threat to society. The record reveals that the prosecution stated its intentions, in the Bill of Particulars, to show that the appellant was charged with murder in Texas, and that Bobby Johnson, a co-defendant who had pled guilty in that case, would be called

as a witness. As the purpose of 21 O.S. 1981, § 701.10 is to allow the accused an opportunity to prepare a defense, we find that the notice given was sufficient. *See Jones v. State,* 660 P.2d 634 (Okl.Cr.1983).

Next, the appellant alleges that the evidence presented was insufficient to support the aggravating circumstances.

First, the appellant contends that the evidence was insufficient to support the aggravating circumstance that he knowingly created a great risk of death to more than one person [21 O.S.1981, § 701.12(2) ] because there was no evidence that he pointed a gun at anyone other than Officer Mahan. Although this aggravating circumstance is normally applied to situations where several people are killed or wounded, this Court has found that the evidence supported the aggravating circumstance when a defendant pointed a revolver at a group of teenagers who were verbally taunting him. *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980). The appellant threatened the motel clerk with death if she did not cooperate. His shooting of the police officer showed his willingness to act on the threat, and she was in the immediate area when Officer Mahan was shot. The Supreme Court of the United States has upheld two Florida death sentences under a statute similar to 21 O.S.1981, § 701.12(2). *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), *reh. denied,* 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158 (1976), and *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). We find that the facts support this aggravating circumstance.

Second, the appellant argues that the evidence was also insufficient to support the aggravating circumstance that the homicide was especially heinous, atrocious, or cruel [21 O.S.1981, § 701.12(4) ] because there was no evidence of physical abuse or torture, or that the victim suffered "an inordinate amount of pain." In *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), *rev'd on other grounds,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), *modified,* 688 P.2d 342 (Okl.Cr.1984), this Court held that the fact

that the victim was a police officer rendered the crime especially heinous, atrocious or cruel where a highway patrolman was killed by a shotgun blast as he approached a vehicle he had stopped for a traffic violation. We stated that the identity of the victim and the manner in which the killing was done made his murder especially abhorrent as the officer was not expecting danger. In the case before us, an officer was making a routine stop to check on a hotel clerk, and when suddenly confronted by the appellant, obeyed each command, but was shot anyway at close range. Given the circumstances and the manner of killing, we find the evidence supports this aggravating circumstance. *See also Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985) and *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985), for discussion of the consideration to be given the manner of killing in determining whether a murder is heinous, atrocious, or cruel.

Third, the appellant urges that the evidence was insufficient to support the aggravating circumstance that he constituted a continuing threat to society [21 O.S.1981, § 701.12(7) ] because he alleges that the only evidence presented to support it was the uncorroborated testimony of an alleged accomplice to a Texas murder. Prior to trial, the State gave notice in a Bill of Particulars in conformance with 21 O.S. 1981, § 701.10, that in support of the aggravating circumstance it would present evidence that the appellant was charged with the offense of Capital Murder in Texas. During the second stage hearing the State called Bobby Dean Johnson who testified that he and the appellant committed a murder for hire in Texas. No further evidence was presented corroborating Johnson's testimony. The State also incorporated the evidence from the first stage into the second stage. That evidence included details of the victim's death from the medical examiner's testimony, the evidence of the armed robbery and the details of the

murder itself. Details of the crimes for which a defendant is being tried can be evidence of this aggravating circumstance. In *Robinson v. State,* 677 P.2d 1080 (Okl. Cr.1984), *cert. denied,* —— U.S. ——, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984), this Court held:

> [T]he calloused manner in which the crimes were committed supports the finding that there is a probability that appellant would commit future acts of violence which would be a continuing threat to society.

*See also Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *aff'd.,* 700 P.2d 223 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985) and *O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Under the facts in this case, we find that there is sufficient evidence to support this aggravating circumstance.

Fourth, the appellant urges that if one of the aggravating circumstances was not supported by the evidence, or improperly instructed upon, the death penalty cannot stand. As we have not so found, we will not address this issue. Therefore, this assignment of error is without merit.

The appellant urges in two assignments of error that the aggravating circumstances that "the murder was especially heinous, atrocious, or cruel," and that there exists "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," are being evaluated in an arbitrary manner and therefore violate the rule in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) in that our rule provides "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey,* 446 U.S. at 433, 100 S.Ct. at 1767. As we have addressed the support for the sufficiency of the evidence on each of these aggravating circumstances, and we address elsewhere in this opinion whether the sentence of death in this case is excessive, we

find that the reasoning adequately distinguishes this case from murder cases in which these two aggravating circumstances would not apply.

Additionally, the appellant argues that the trial court failed to define specifically the elements of the aggravating circumstance that there existed the probability that the appellant would constitute a continuing threat to society. Trial counsel failed to object to the court's proposed instructions, and did not offer an instruction on this issue. Accordingly, this issue is not properly preserved for appellate review. *See Nuckols.* Furthermore, we have reviewed the second stage instructions for fundamental error, and find that they gave the jury ample guidance in its consideration of the sentence. *See Nuckols.*

In another assignment of error the appellant contends that the trial court erred in refusing the appellant's requested instruction on mitigating circumstances. An examination of the record reveals that the court did give an instruction on mitigating circumstances, and that when the instructions are read as a whole, the trial court stated all of the applicable law. Therefore, this assignment of error is meritless.

The appellant asserts next that comments made by the prosecutor during closing arguments in both stages denied him a fair trial. We note, however, that none of the comments now complained of drew either an objection or a request that the jury be admonished to disregard said comments. This failure to preserve the alleged error limits our review to a search for fundamental error. *Boomershine v. State,* 634 P.2d 1318 (Okl.Cr.1981). As our review of the prosecutor's comments reveals no error warranting either reversal or modification of the sentence, and in light of the overwhelming evidence of guilt, we find this assignment of error to be without merit.

Appellant reurges several of his assignments of error for the purpose of arguing that defense counsel was ineffective. After examining the record, and considering the guidelines of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), we fail to find that defense counsel was ineffective.

 Finally, the appellant alleges that the penalty of death was disproportionate to the penalty imposed in similar cases. In addition, this Court is required to make two (2) determinations relative to the imposition of a death sentence. 21 O.S.Supp.1985, § 701.13(C).

Concerning whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, we find that considering the amount and quality of the evidence against the appellant, that the sentence was not imposed under the influence of any arbitrary factor.

Concerning whether the evidence supports the jury's finding of the statutory aggravating circumstances, we have previously stated that it does.

We therefore find that the appellant's final assignment of error is without merit.

The judgments and sentences are AFFIRMED.

BRETT, J., concurs.