**Norman Lee NEWSTED, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–474.**

Court of Criminal Appeals of Oklahoma.

June 3, 1986.

Vote Corrected June 16, 1986.

Rehearing Denied July 7, 1986.

E. Alvin Schay, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Norman Lee Newsted, the appellant herein, was charged, tried, and convicted in the District Court of Osage County, Case No. CRF–84–26, for the offense of Murder in the First Degree. His punishment was assessed by the jury at death. Judgment and sentence was imposed by the District Court in accordance with the jury's verdict.

On the evening of February 20, 1984, the appellant arrived at Tulsa International airport. He hailed a taxi cab driven by Larry Donnell Buckley, and asked to be driven to an address appellant apparently believed was his sister's. When they were unable to locate the address, Mr. Buckley stopped at a gas station to ask directions. Appellant purchased a pack of cigarettes and a beer. Although appellant paid for his purchases, a cashier saw no money in appellant's billfold when he pulled it out. Appellant and Mr. Buckley next stopped at Calvary Temple of God church to again ask directions. Appellant asked to use the telephone and made a call. Witnesses at the church saw appellant leave the building, and saw the taxi cab driver under an awning at the church. Soon thereafter they heard two loud noises. The appellant's sister soon arrived at the church to pick up her brother. His pants were wet and he explained that the cab driver had pulled a knife and attempted to rob him. He said he shot the taxi cab driver. When they arrived at her house, appellant's sister left with her children and later called police.

The next morning a pastor at the church discovered the taxi cab partially submerged in a creek near the church parking lot. Mr. Buckley was found in the cab, dead from two gunshot wounds to the back of the head.

Based on their investigation and information that appellant was wanted by Utah authorities in connection with a mass murder there, police located appellant at his sister's house and arrested him. Appellant told police that he shot Mr. Buckley only

after the victim pulled a knife and attempted to rob him. He admitted that he took the victim's wallet. Evidence showed that the appellant had $40.00 in his possession at the time of his arrest. Appellant testified at trial and repeated his story that he shot the victim when Buckley attempted to rob him with a knife.

## THE GUILT STAGE OF TRIAL

### I.

■ In his second assignment of error, the appellant alleges that the trial court erred in failing to instruct the jury that it was required to unanimously find that the appellant committed murder in the first degree either with malice aforethought or while committing robbery with a dangerous weapon. The record regarding this issue reflects that an Information was filed in this case alleging that the appellant did "with premeditated design and malice aforthought ... or in the alternative ... while ... committing the crime of robbery with a dangerous weapon, although without a premeditated design to effect death" kill Mr. Buckley. This method of alleging alternative legal theories for the same offense is permitted by 22 O.S. 1981, § 404. *See Cosby v. State*, 85 Okl.Cr. 159, 186 P.2d 844 (1947). Appellant contends, and the record reflects, that the jury, although instructed that their verdict had to be unanimous, was not instructed that their finding of the factual basis supporting one of the two theories also had to be unanimous. Appellant alleges this procedure denied him the due process of law. We disagree.

This question was settled by our opinion in *James v. State*, 637 P.2d 862 (Okl.Cr. 1981). In *James*, the defendant was charged with murder in the first degree in connection with a fatal shooting during the attempted robbery of a candy store in Oklahoma City. The defendant was charged by alternative theories, as herein. He also raised a claim identical to that made here, and it was rejected for the following reasons:

The due process clause of the Constitution demands that each element of a crime be proven. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, all of the elements of this crime were proven. The State established a prima facie case of murder in the first degree by proving, first, that the homicide occurred during an armed robbery, and, therefore, fell within felony murder; and second, that the appellant had committed the homicide with premeditation. No violation of due process occurred.

A unanimous verdict is guaranteed by this State's Constitution. Okla. Const., art. 2, § 19. In 1961, this Court construed that right to mean that a verdict of guilt on a charge of two distinct acts of rape had to reflect a unanimous finding of guilt based upon one specific act or on both acts, but not on either one or the other act. See *Cody v. State*, 361 P.2d 307 (Okl.Cr.1961).

However, the question now before this Court is one of first impression. Unlike *Cody*, there are not two separate offenses, but like *Cody* there is no indication of the jury's findings in determining guilt. The issue for resolution is whether the *Cody* rule applies to the case at hand where there are two alternative theories upon which to base the conviction for first degree murder, each of which was alleged and proven.

Other jurisdictions have encountered this problem, often in reviewing convictions based upon alternative theories of premeditated murder and felony murder. In *Connecticut v. Edwards*, 163 Conn. 527, 316 A.2d 387 (1972), the defendant was indicted conjunctively with premeditated and felony murder in the first degree, based upon an underlying robbery. The jury was then charged disjunctively, as was the jury in the case before this Court. The conviction was affirmed because there was but a single crime charged and the alternatives went to the factual basis of the crime, not the crime itself.

In *People v. Taggart*, 621 P.2d 1375 (Colo.1981), the Colorado court held that the defendant was not denied a unanimous verdict by merit of the fact that the general verdict did not specify which alternative was the cause of the crime. And, in *State v. Hazelett*, 8 Or.App. 44, 492 P.2d 501 (1972), the Oregon Court upheld a jury instruction that the verdict must be unanimous as to the guilt or innocence of murder in the first degree but that they need not reach a unanimous decision on its foundation in either felony murder or premeditated murder. See also *State v. Wilson*, 220 Kan. 341, 552 P.2d 931 (1976); and *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 at 88 (1978).

Having examined these decisions, and having found that the State did prove both premeditation and felony-based murder, this Court finds that the failure of the jury to indicate the basis of their finding of guilt was not error.

*Id.* at 865–66. We find that our holding in *James v. State*, is dispositive of this issue. Accordingly, this assignment of error is without merit.

## II.

 Next, appellant claims the trial court unduly restricted his opening statement to the jury by sustaining objections made by the prosecutor. The purpose of the opening statement is to advise the jury what evidence will be presented, and to prepare them for it. *Carson v. State*, 529 P.2d 499 (Okl.Cr.1974). The trial court may control the scope of opening statement in its informed discretion. *Shipman v. State*, 639 P.2d 1248 ((Okl.Cr.1982). Our careful examination of the record reveals that on several occasions defense counsel exceeded the scope of proper opening statement by arguing the merits of the case. The trial court properly disallowed such arguments. Furthermore, although at least one of the prosecutors' side-bar comments were improper, these comments, standing alone do not require either reversal or modification. This proposition is wholly without merit.

## THE SENTENCING STAGE OF TRIAL

We now turn to those assignments of error challenging the death sentence. In support of the death penalty, the State alleged, and the jury found, two aggravating circumstances, to-wit: (1) that the appellant was previously convicted of a felony involving the use or threat of violence to the person; and, (2) the existence of a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S. 1981, § 701.12(1) and (7). The State supported the first aggravating circumstance with the admission of evidence that appellant was previously convicted in Nevada upon a plea of guilty for robbery and use of a deadly weapon in the commission of a crime, and second degree kidnapping. In its attempt to prove that the crimes were of a violent nature, the State submitted copies of the preliminary hearing transcript for those cases. The State offered proof of the second aggravating circumstance by producing evidence linking appellant to in an unadjudicated offense in Utah which resulted in the death of three people.

## III.

Appellant's first and fourth assignments of error deal with similar issues regarding notice. We therefore combine our discussion of them.

In his first assignment of error, appellant contends that he was entitled to a preliminary hearing on the allegations contained in the Bill of Particulars filed by the State. The Bill of Particulars announced the State's intention to seek the death penalty, and listed those aggravating circumstances enumerated in 21 O.S. 1981, § 701.-12 which the State hoped to prove. Failure to provide a preliminary hearing on this issue deprived the District Court of jurisdiction to impose the death sentence, according to appellant's argument. We disagree.

 We first note that 21 O.S. 1981, § 701.10 does not require any type of pre-

trial hearing regarding the validity of the State's aggravating circumstances; its provisions are satisfied if evidence in aggravation is made known to the defendant prior to trial. *See Jones v. State*, 660 P.2d 634 (Okl.Cr.1983). We have repeatedly held, therefore, that a preliminary hearing on the aggravating circumstances alleged by the State is not required. *E.g., Brewer v. State*, 650 P.2d 54, 61 (Okl.Cr.1982); and *Dutton v. State*, 674 P.2d 1134, 1140 (Okl. Cr.1984). Appellant has failed to present a compelling reason for us to abandon this precedent.

Appellant contends in his fourth assignment of error that no disclosure was made by the State of the evidence it intended to use in support of the aggravating circumstance that appellant constituted a continuing threat to society. In a related argument, appellant asserts that the Bill of Particulars was not timely filed.

 The facts surrounding this issue reveal that on May 16, 1984, the State filed its Bill of Particulars. The Bill announced the State's intention to prove the two aggravating circumstances previously mentioned. In support of its claim that the appellant had suffered prior convictions involving the use or threat of violence to the person, the Bill listed, in detail, those convictions upon which the State was relying. Regarding the claim of future dangerousness, the Bill simply recited "[t]hat from past behavior of the defendant" the aggravating circumstance would be proven. On June 18, 1984, the State filed a "Notice of State's Intention to Introduce Evidence of Other Crimes," the so-called *"Burks* notice."[1] This notice listed, in detail, the unadjudicated offense in Utah. The notice advised that the evidence was admissible, in the first stage of trial, to "prove lack of mistake or accident and motive for killing." When trial commenced on June 18, 1984, the State did not offer evidence of the Utah killings in the first stage. Instead, the State was allowed to present this evidence in the punishment phase of trial to support its claim of future dangerousness.

We agree with appellant that the Bill of Particulars contained insufficient notice of the evidence intended in support of the allegation of future dangerousness. We have previously held that "[t]he purpose of the [notice] requirement in Section 701.10 is to allow the accused an opportunity to prepare a defense." *Jones v. State*, 660 P.2d at 639. *See also Johnson v. State*, 665 P.2d 815, 823 (Okl.Cr.1982). The statement in the Bill of Particulars that the State would prove future dangerousness "from the past behavior of the defendant" provides no clue regarding what alleged past behavior the accused would be called to defend against. As we stated in *Johnson*, "[a]dmitting evidence of unadjudicated criminal offenses requires the defendant to defend against more than one charge in the sentencing proceeding. Fair play and substantial justice mandates that a defendant be provided with notice when the State intends to offer evidence of unadjudicated criminal offenses." *Id.*

 However, an error, constitutional or statutory, which does not result in prejudice to the defense will not result in reversal of a conviction. 20 O.S. 1981, § 3001.1 Appellant has failed to demonstrate unlawful prejudice from the admission of this evidence. The *Burks* notice, though technically limited in this case to the first stage of trial, did contain detailed information regarding this unadjudicated offense. We have previously held that proof of an unadjudicated offense is admissible to show the existence of a probability that the accused would commit future acts of violence constituting a continuing threat to society. *See Johnson v. State*, 665 P.2d at 823. And, evidence from the first stage of trial is typically incorporated into the punishment phase to provide proof of aggravating circumstances. *See, e.g., Stout v. State*, 693 P.2d 617, 627 (Okl.Cr.1984). This is not a case in which counsel was wholly unaware prior to trial of relevant proof regarding an unadjudicated offense. It appears from the record that defense counsel

---

1. *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979)

was quite familar with the facts of the Utah murders, and was able to limit somewhat the damaging effect of the evidence through a probing cross-examination of the State's witnesses. We are therefore compelled to deny this claim.

■ Finally, we reject appellant's contention that the Bill of Particulars was not timely filed. In this case, the appellant was informed more than a month before trial of the aggravating circumstances the State intended to prove and the proof supporting the first aggravating circumstance. Evidence of the second aggravating circumstance was made known to appellant ten days before trial. We hold that in this context the Bill of Particulars was timely filed. *Cf. Jones v. State*, 660 P.2d at 639 (Appellant informed eighteen days prior to trial what aggravating circumstances the State intended to prove, and evidence of the aggravating circumstances was disclosed five days before trial. *Held:* notice sufficient).

### IV.

■ In his sixth assignment of error, the appellant asserts that the instructions offered in the punishment phase did not provide particularized guidance to the jury's consideration of mitigating evidence. We disagree. We held in *Brogie v. State*, 695 P.2d 538, 544 (Okl.Cr.1985) that "[s]pecific standards for the balancing of the aggravating and mitigating circumstances are not constitutionally required." *See also Cartwright v. State*, 695 P.2d 548, 552–53 (Okl.Cr.1985). The jury was instructed that it could not impose the death sentence unless it found that the aggravating circumstances clearly outweighed any mitigating circumstances it might find. The trial court did not in any way limit the jury's consideration of mitigating circumstances. The instructions herein, therefore, were entirely proper and correct. *See Chaney v. State*, 612 P.2d 269, 279–80 (Okl.

Cr.1980). This assignment of error is without merit.

### V.

■ Appellant also contends the trial court erred in failing to instruct the jury that, if they were unable to reach a unanimous verdict as to punishment within a reasonable time, they would be dismissed, and the judge would enter a sentence of life imprisonment. We previously rejected this same argument in *Brogie v. State*, 695 P.2d at 547, and we adhere to that holding today. This assignment of error is without merit.

### MANDATORY SENTENCE REVIEW

### VI.

■ Finally, pursuant to 21 O.S. 1981, § 701.13(C), which was in effect at the time this appeal was filed,[2] we are required to make the following determinations in all capital cases:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in this act; and

3. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

### A.

We have carefully examined the record for any indication that the sentence of death was imposed under the influence of passion or prejudice. Both the trial judge's report and the record disclose that the jury was instructed to avoid any influence of passion, prejudice or other arbitrary factor when imposing sentence. *Report of Trial Judge* at 5. Furthermore, the trial judge

---

**2.** Although the Legislature has revised this statute somewhat in 1985 Okla. Sess. Laws, Ch. 265, codified at 21 O.S. 1981, § 701.13, we held that to apply this new statute to cases pending on appeal at the time the statute was enacted would render the new provision *ex post facto* law. *Green v. State*, 713 P.2d 1032, 1041 n. 4 (Okl.Cr. 1985).

made a specific finding that the jury was not so influenced. *Id.*

### B.

We also find that the evidence was adequate to support both aggravating circumstances. Regarding the claim that appellant had sustained prior convictions for felonies involving the use or threat of violence to the person, the State produced evidence that appellant had been convicted of a robbery and kidnapping in Nevada. Also admitted were preliminary hearing transcripts revealing the violent circumstances surrounding those crimes. The allegation of future dangerousness was supported by evidence that appellant participated in a robbery which resulted in the brutal death of three people. The aggravating circumstances were adequately proven.

### C.

We have compared the sentence imposed herein with those previous cases either affirmed[3] or modified[4] by this Court, and we find the sentence is proportionate.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT and BUSSEY, JJ., specially concur.

BUSSEY, Judge, specially concurring.

I agree that the judgment and sentence in this case should be affirmed. However, I am of the opinion that a proportionality review of death sentences is unnecessary. Such was our holding in *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986) and *Ross v. State,* 717 P.2d 117, which were decided subsequent to *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985).

BRETT, Judge, specially concurring.

I concur that the judgment and sentence in this case should be affirmed, but I agree with the special concurrence of Judge Bussey, that the proportionality review of death sentences is now unnecessary.

IT IS SO ORDERED.

**3.** *Ross v. State,* 717 P.2d 117 (Okl.Cr.1986); *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986); *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985); *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985); *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985); *Bowen v. State,* 715 P.2d 1093, 55 O.B.J. 2520 (Okl.Cr. 1985); *Stout v. State,* 693 P.2d 617 (Okl.Cr. 1984); *Nuckols v. State,* 690 P.2d 463 (Okl.Cr. 1984); *Robison v. State,* 677 P.2d 1080 (Okl.Cr. 1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr. 1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr. 1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr. 1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr. 1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr. 1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub nom., Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984).

**4.** *Parker v. State,* 713 P.2d 1032 (Okl.Cr.1985); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), as *modified,* 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983) (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl. Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl. Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr. 1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr. 1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr. 1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr. 1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr. 1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr. 1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr. 1981); and *Irvin v. State,* 617 P.2d 588 (Okl.Cr. 1980).